## Johnston *v.* Markle Paper Company. Miller's Appeal. Johnston's Appeal. Benedict's Appeal.

*Implied covenants in deed—Payment.*

The covenant against incumbrances implied in the words "grant, bargain and sell," will not be enforced to compel the payment of a mortgage existing on the land but not mentioned in the deed, where, under an agreement between the parties, other land is subsequently conveyed to the grantee, as payment of the mortgage.

*Deed—Implied covenant against incumbrances—Payment.*

Three sisters owned as tenants in common two mill properties known as mill A. and mill B. On mill A. was a mortgage for $37,250. The mills were idle and unproductive, and the three sisters with other parties

formed a corporation, to which mill A. was conveyed for the consideration of $70,000 in the paid-up capital stock of the corporation at par. No reference was made to the mortgage in the deed, because it was agreed that mill B. should also be conveyed to the corporation to be used for the payment of the mortgage, and to help to secure a working capital. Subsequently mill B. was conveyed to the company for a nominal consideration of $20,000, no part of which was paid or secured in any manner to the grantors. The company failed to sell mill B, and the mortgage remained unpaid, and the corporation was without working capital. A failure resulted, and the corporate property was sold for the benefit of creditors. A bill in equity was subsequently filed by a creditor of the company against the three sisters to compel the payment of the mortgage on mill A. *Held*, that the conveyance of mill B. to the corporation effected a payment of the mortgage, and that under the circumstances the covenant against incumbrances, implied from the words " grant, bargain and sell," could not be enforced.

*Equity—Creditors' bill—Intervention of parties—Participation in fund—Costs.*

On a creditor's bill to enforce payment of unpaid subscriptions to the stock of a corporation, where other creditors subsequently intervene, the court may compel the intervening creditors to contribute to expenses already incurred in raising the fund on which they seek to come, but will not exclude them from all participation in the fund until the original complainants in the bill have been paid in full.

Argued Nov. 10, 1892. Appeals, Nos. 284 and 287, Oct. T., 1892, and No. 9, Oct. T., 1893, by Mortimer C. Miller, administrator of Margaret Ann McMasters, deceased, J. W. Johnston et al., and Joseph Benedict, from decree of C. P. No. 2, Allegheny Co., April T., 1888, No. 231, on bill in equity. Before Paxson, C. J., Sterrett, Green, Williams, McCollum, Mitchell and Heydrick, JJ.

Bill to enforce payment of mortgage, and to compel payment of subscriptions to stock of corporation.

The bill was originally filed by J. W. Johnston, The Garrison Foundry Co., The Norway Pulp Co., John A. McGraw, Stoner & Co., Limited, James Harrison, The W. L. Tyler Wire Works, V. Sutphen, and Buckley, Dunton & Co.

Subsequently at various dates the court allowed James W. Drape, Joseph Benedict, R. Munroe & Sons, W. H. Parsons, Sheridan Bros., D. W. Huntsman & Co., Hartje Bros., T. A. Bygate and McVeagh & Walker, to intervene and become parties plaintiffs.

The case was referred to George P. Hamilton, Esq., as mas-

ter, who filed a report finding that Mrs. Margaret Ann Mc-Masters was indebted on her stock subscription in the sum of $9,916.66, and also that she was indebted in the further sum of $9,083.33 on account of an unpaid mortgage.   The facts relating to this mortgage are fully stated in the opinion of the Supreme Court.   Exceptions to the master's report were overruled, and a decree entered in accordance with the recommendation of the master.

The case was then referred back to the master to ascertain the total amount of the debts of the Markle Paper Co., and the parties to whom said debts were owing.   The master excluded the claim of Joseph Benedict on the ground that Benedict had been a director and stockholder, a signer of the articles of incorporation, had not paid his stock, and was thereby estopped from claiming as against Mrs. McMasters.   He also assessed Benedict with $30.00 to be paid on account of his one share of stock.   To this report of the master, exceptions were filed by Benedict.   After argument in court thereon, the master's report was modified in so far as to permit Benedict to participate pro rata with the other creditors in the sum of $9,916.67, being the amount of Mrs. McMaster's subscription in excess of her share of the property contribution of $70,000, but expressly excluding Benedict from sharing in any other fund.   The court entered the following final decree :

" 1. That the unpaid subscriptions of Margaret Ann Mc-Masters to the capital stock of the Markle Paper Company and her liability on account of the mortgage, less the credit for mill B, amounts to $27,166.67.

" 2. That the administrator of Margaret Ann McMasters, deceased, pay unto Hon. S. A. McClung, receiver, the sum of $21,431.54, with interest thereon from June 1, 1892, to date of payment, together with the costs of these proceedings up to and including the first decree, including a master's fee of $300 allowed to the master on the first reference ; the said receiver to give credit on said sum for all moneys heretofore collected, to wit, since the entry of the first decree, with interest on said moneys from the date at which they respectively came into his hands.

" 3. It is further ordered that Joseph Benedict pay unto said receiver the sum of $30.00, for which he has been adjudged liable on account of his unpaid subscription.

" 4. It is further ordered that the costs of re-reference, including a master's fee of $300, be paid by D. W. Huntsman & Co., Hartje Bros., H. D. Sellers, Joseph Benedict and W. H. Parsons in proportion to their respective claims, to be calculated upon a percentage basis ; these amounts to be retained by the receiver out of the sums coming to said parties.

" 5. It is further ordered that out of the moneys in the hands of the receiver the sum of $9,916.67 be first distributed among all the creditors in accordance with the schedule hereto attached, *in proportion to their respective claims.*

" 6. It is further ordered that all moneys over and above said last mentioned sum in the hands of the receiver, or hereafter to be collected by him, be distributed among all creditors, except Joseph Benedict, who is hereby expressly excluded from sharing in any other fund, in accordance with the schedule hereto attached.

" 7. It is further ordered that the receiver retain for the use of counsel of original plaintiffs ten per centum out of the amounts that may be awarded and paid in distribution on the claims of the intervening creditors as a compensation and allowance to the counsel of original plaintiffs.

" 8. Upon making the payment as aforesaid, the estate of the said Margaret Ann McMasters, deceased, shall forever be discharged and acquitted of and from liability on account of her said stock subscription."

*Error assigned* by Mortimer C. Miller, administrator, was, inter alia, decree of court, quoting it.

` `*Error assigned* by J. W. Johnston et al., was, inter alia, (2) in permitting the creditors who petitioned for leave to intervene after the first decree made, to share with these appellants in any funds in the hands of the receiver, or to take anything until appellants are paid in full.

*Errors assigned* by Joseph Benedict were, inter alia, the fourth, fifth, sixth and seventh paragraphs of the final decree, quoting them.

*John E. Ferguson, E. J. Hartje* with him, for Mortimer C. Miller, administrator.

*West McMurray, C. C. Dickey* with him, for J. W. Johnston et al., cited Cornell's Ap., 114 Pa. 163.

*Joseph Stadtfeld*, for Joseph Benedict, cited Lane's Ap., 105 Pa. 62; Merrick v. Peru Coal Co., 61 Ill. 478; 2 Beach on Private Corporations, 1124; Cook on Stockholders, § 205; Wetherbee v. Baker, 35 N. J. Eq. 501; Terry v. Little, 101 U. S. 216.

*A. M. Imbrie*, for Sheridan Brothers.

OPINION BY MR. JUSTICE WILLIAMS, January 3, 1893:

Mrs. McMasters was a corporator in the Markle Paper Company. She subscribed for six hundred and sixty-five shares of the capital stock having a par value of fifty dollars each, and a total value of thirty-three thousand two hundred and fifty dollars.

She paid for and received shares to the amount of twenty-three thousand three hundred and thirty-three dollars and thirty-three cents, leaving still due upon her subscription nine thousand nine hundred and sixteen dollars and sixty-six cents.

She alleged that her brother, S. B. Markle, subsequently paid for the balance of her shares and was entitled to them and that she was not indebted on account of capital stock. The master has found against her upon this point. The court below has concurred in the finding, and upon examination we are satisfied that there is evidence upon which the finding may fairly stand.

She is therefore liable to the creditors for the unpaid balance due upon her subscription to the capital stock, and her liability may be enforced in this proceeding. But the decree appealed from charges her with a further sum of nine thousand eighty-three dollars and thirty-three cents, being the one-third part of a mortgage resting upon the real estate conveyed to the corporation by herself and her sisters, Mrs. Larrimer and Mrs. Tinstman, for seventy thousand dollars in the paid-up capital stock of the corporation at par. The remaining question is therefore whether this part of the decree ought to be sustained.

The three sisters had purchased the property known as mills A. and B. for a price which upon the whole evidence was less than its real value; and which according to the testimony of P. C. Knox, Esq., was less than it would have been sold for to any other parties. The property was unproductive, and while idle was depreciating in value. A scheme was devised

by their brother S. B. Markle, and the husbands of Mrs. Larrimer and Mrs. Tinstman, and some other persons, to organize a corporation to buy and operate the mills. The testimony of S. B. Markle and Mr. Knox indicates that the arrangement contemplated a sale of the property to the corporation for seventy thousand dollars.

Mill A. was to be conveyed to the Markle Paper Company at once for that sum, while mill B. was to be used for the payment of the mortgage and to help secure a working capital. It is apparent that the several corporators knew of the existence of the mortgage, and refrained from any mention of it in their articles, or in the deed for mill A., because under the arrangement for its payment they treated it as paid. Subsequently mill B. was conveyed to the company for a nominal consideration of twenty thousand dollars, no part of which was paid or secured in any manner to Mrs. McMasters and her sisters.

Like many other specious schemes, this one which the Markle Paper Company adopted did not realize the hopes of its projectors. They were unable to sell mill B. They failed to negotiate a new loan by which the mortgage could be extinguished and some working capital secured.

As a last resort they enlarged their capital stock, but they made no sales of the additional shares. The mortgage remained unpaid, and the corporation remained without a working capital. A failure resulted, and the mills and other assets of the Markle Paper Company, including the corporate franchise, have been sold for the benefit of its creditors.

Upon these circumstances we are to inquire whether the corporation was misled by Mrs. McMasters and her sisters, and whether the covenant implied from the words "grant, bargain and sell" ought, as between the vendors and vendees of this property, to be enforced in a court of equity.

If the vendees were not misled, but bought with knowledge of the incumbrance and provided a mode for idemnifying themselves against it as part of the contract of purchase, then they have no equity that entitles them to relief at the hands of a chancellor. The master seems to have overlooked this question, for he has made no finding of fact upon it; but the evidence to which we have already referred is sufficient to show that the

existence of the mortgage was well understood, and that mill B. was not included in the same deed with mill A., because it was set apart for use in the payment of the mortgage either by its sale, by the use of it as a basis for a loan, or an increase of stock. This being so this mortgage was, as between the grantors and the corporation grantee, paid, and the subsequent failure of the corporation to make sale of mill B., to borrow money upon it, or sell stock resting upon this addition to the corporate property is not the fault of Mrs. McMasters, but the misfortune of the Markle Paper Company. The plaintiffs stand in the shoes of the corporation. If that could not call on the grantors to pay the mortgage in money after having paid it in property to the corporation itself, neither can its creditors do so.

But it is said that the grantors should in no event be credited on the mortgage for a larger sum than the purchase money named in the deed for mill B. which was twenty thousand dollars, and for the balance they should now respond in cash. There might be force in this position if it was not clear that the consideration money so named was a matter of form, and that no part of it was in fact paid or intended to be. The conveyance seems to have been made in pursuance of the original arrangement that this mill should be set apart for the payment of the mortgage, and when the corporation failed in its efforts to make a sale, or procure a loan, nothing remained but to convey directly to the corporation, so that it could be used by it for any purpose that promised financial relief.

The grantors are therefore entitled to credit according to the actual arrangement under which mill A. was conveyed; not according to what the corporation which was without working capital, and embarrassed at every step of its career, might realize from mill B., nor yet by reference to the formal statement of a consideration in the deed for mill B. that was neither paid in fact nor intended to be paid.

We think the auditor's mistake was in overlooking the evidence bearing upon this question, and resting his findings on the effect of the words "grant, bargain and sell" alone.

The evidence on which the liability of Mrs. McMasters must rest as to this part of the decree, does not seem to us to be of a character to justify a chancellor in finding a breach of

the covenant contained in her deed, when all the facts relating to the sale and conveyance of these mills are taken into account. So much of the decree as requires payment of one third of the amount of the mortgage covering mills A. and B. at the time of the conveyance of mill A. to the corporation is reversed.

The decree is affirmed so far as it relates to the unpaid stock. The record is remitted to the court below that the decree may be modified as may seem necessary to make the distributee conform to the fund.

## JOHNSTON'S APPEAL.

OPINION BY MR. JUSTICE WILLIAMS, January 3, 1893:

The appellants assign for error that the learned judge of the court below allowed creditors who were permitted to intervene and become parties to the bill, to share in the fund pro rata.

They allege that such as were allowed to intervene after the first decree should have nothing until those who were on the record before them are paid in full. The court properly declined to apply such a rule in this case. If the creditors referred to ought to contribute to expenses already incurred in raising the fund on which they seek to come, the court below had ample power to make such order as justice and equity might require when leave to intervene was given or when distribution was decreed. So much might well be thought to be due from the sleeping to the vigilant when asking to be permitted to share in the fruits of vigilance actually exercised; but we cannot now say that the court was in error in not going the length of practically excluding the creditors who came into court late from all participation in the fund, until appellants were paid in full.

The appeal is therefore dismissed.

## BENEDICT'S APPEAL.

OPINION BY MR. JUSTICE WILLIAMS, January 3, 1893:

The main ground of complaint by the appellant, his exclusion from the fund raised as damages for the breach of the implied covenant of Margaret A. McMasters in the deed for mill A. to the Markle Paper Works, is removed by the opinion filed here-

with, disposing of the appeal of Mrs. McMasters, or M. C. Miller, her administrator.

We think the appellant has no just ground to complain of the decree as it now stands.

The assignments of error are therefore overruled and the appeal dismissed.