# The Commonwealth of Pennsylvania *v.* The Northern Central Railway Company, Appellant.

*Nuisance—Overhead bridge—Obstructing highway—Question for jury.*

On a trial of an indictment for erecting and maintaining a common nuisance by the construction of an overhead bridge over a turnpike road, the court properly defined the true question for the jury to be, Whether the erection of the bridge worked injurious results to the people by being an unreasonable obstruction upon a public highway and thereby unreasonably inconveniencing and incommoding public travel?

*Evidence—Nuisances—Bridge over highway.*

The obligations and duties of a corporation which has erected a bridge over a public highway, cannot be measured by the manner in which another corporation discharges its obligations in the same direction. Evidence of the conditions of a similar bridge is not admissible for defendant on indictment charging a defendant with maintaining a nuisance in the erection of a bridge over a public highway.

Argued March 16, 1898. Appeal, No. 24, March T., 1898, by defendant, from judgment of Q. S. Cumberland Co., Nov. Sess., 1896, No. 48, on verdict of guilty. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Indictment for a nuisance and maintaining a nuisance. Before E. W. BIDDLE, P. J.

It appears from the record that the defendant company was indicted for maintaining a nuisance on a certain public highway by unlawfully erecting embankments and piers and placing

thereon an overhead iron bridge called a Y. It also appears from the evidence that: The Northern Central Railway constructed its road on the west bank of the Susquehanna and crossed this highway a short distance from the river and the bridge. It crossed the turnpike at grade where the road made a sharp descent towards the river. This grade crossing was complained of as a nuisance. The railway company was convicted and required to abate the nuisance. (The case is reported as Northern Central Railway Co. v. Com., 90 Pa. 306.) In abatement of the nuisance the railway company made an undercut for the turnpike road about six hundred and forty feet in length and crossed with its main track by an overhead bridge. The width of this undercut was twenty-four feet while the right of way of the turnpike road was fifty feet with the requirement that twenty-two feet of roadway should be kept up. The undercut was made in 1882 with the consent of the turnpike company, was accepted and has since been used as its roadway.

This being the situation the railway company about 1885 constructed the railroad Y crossing by an overhead bridge over the undercut made for the turnpike a short distance west of the main track. It gave to the bridge a clearance of eleven feet nine inches on one side and twelve feet six inches on the other side, while the clearance of the Harrisburg bridge was ten feet nine inches.

At the trial defendant offered in evidence certain acts of assembly relating to the incorporation of the Harrisburg bridge leading to the city of Harrisburg for the purpose of showing "that in the building of the Y bridge a clearance was allowed equal to and in excess of the clearance fixed in the great system of roads between Harrisburg and Pittsburg, and the existing clearance of this Harrisburg bridge, one of the sections of that system, and for the further purpose of showing that the railroad company, in making that clearance, did all that could be required of it." These offers were rejected under objection. [1, 2]

Defendant submitted, inter alia, the following point, which was refused: "6. The walls of the Y bridge having a space of twenty-four feet in the clear between them are beyond the roadway as relocated by the railway company, at the instance of the turnpike company, and do not constitute a nuisance." [3]

The court below charged the jury, inter alia, as follows:

[If the defendant did build and maintain a stone pier within the limits of the twenty-four feet wide turnpike, and thereby unduly interfered with public travel and convenience, then it was guilty of building and maintaining a nuisance. If, however, it did not impinge upon the turnpike as the same was accepted and adopted by the turnpike company in 1883, then it cannot be held responsible for any interference, or supposed interference, with public travel by reason of the piers being within twenty-four feet of each other.

So in relation to the inquiry whether the superstructure of the bridge is so near the roadbed that it constitutes a nuisance, the same principles must guide you. If public travel and convenience was unduly interfered with by reason of the structure not being higher, the defendant was on that account guilty of the erection and maintenance of a nuisance; otherwise it cannot be adjudged to be guilty.

The true question, therefore, is, has the defendant unlawfully invaded the rights of the people? Has it done that in the erection of the bridge which works injurious results to the public? Has it made an unreasonable obstruction upon a public highway? Does the bridge complained of unreasonably inconvenience or incommode public travel? If you answer those inquiries in the affirmative, your verdict should be guilty. If in the negative then it should be not guilty.] [6]

And refused defendant's ninth point, which was as follows: "Under the evidence in this case and the law applicable thereto, a verdict of acquittal should be rendered by the jury." [7]

The jury found the defendant "guilty in manner and form as it stands indicted as to the pier or abutment on the northeast, and also as to the elevation of the overhead bridge and in regard to width of highway," the court entering the following sentence:

"And now, July 8, 1897, the motion for a new trial is overruled, the concluding words of the verdict, "and in regard to the width of highway," are rejected as surplusage, and the sentence of the court is, that on or before the 1st day of September next the Northern Central Railway Company abate the nuisance which it stands convicted of maintaining' to wit: that it remove so much of the pier or abutment at the northeast

portion of the crossing specified in the indictment as stands within the limits of the twenty-four feet wide roadway, and that it increase the elevation of the iron bridge at said crossing to such an extent as to remove the obstruction to public travel which exists there by reason of the insufficient elevation of the bridge, and that it pay a fine of one dollar and the costs of prosecution." Defendant appealed.

*Errors assigned* among others were (1, 2) rejecting offers of evidence on the part of defendant as to the character and status of the so-called Harrisburg bridge for the purpose of showing that the railroad company in making the clearance of the Y bridge, did all that could be required of it, reciting said offers. (3) In refusing defendant's sixth point, reciting same. (4) Refusal of defendant's eighth point: " 8 The Harrisburg bridge at the time of the construction of the Y bridge by the Northern Central Railway Company was the only roadway leading from the turnpike and the lower end of Cumberland county into Harrisburg, and the clearance given the Y being in excess of that in the Harrisburg bridge, must be deemed to have been reasonable, and therefore is not a nuisance." (6) To a portion of the general charge, reciting same. (7) In refusing defendant's ninth point, reciting same. ·

*Edward B. Watts* and *John Hays*, with them *Horace Keesey*, for appellant.—The state of Pennsylvania contributed to the erection of the Harrisburg bridge as it now stands and has stood for seventy-five years and evidence of the clearance given to said bridge was competent evidence bearing on the decree of the court and duty imposed upon the defendant company in the erection of the Y bridge.

The building of the Y bridge and the clearance given to it was within the discretion of the directors of the railroad. That discretion cannot be passed upon by a petit jury: Com. v. Bridge Co., 148 Pa. 621; Boyd v. Harris, 176 Pa. 484.

The erection of the bridge complained of was in the discretion of the defendant company, and the abuse or misuse by the company of this discretion may be restrained or redressed through the courts: Penna. R. R. Co's. Appeal, 128 Pa. 500.

Almost the exact point came up in Gray v. Danbury, 54 Conn. 574. See also Talbot v. Taunton, 140 Mass. 552.

A railroad company occupying a portion of a public road not exceeding the extent allowed by law and obstructing public travel on such portion is not guilty of nuisance: Railroad Co. v. Com., 73 Pa. 29.

The binding instructions asked for in the ninth point should have been given because (1) the clearance of the Y bridge was under the facts, reasonable—not an abuse of misuse of power— and as matter of law the court should have so ruled; (2) if one abutment infringed upon the new roadway it was not the subject of indictment, and therefore, (3) a verdict of acquittal should be ordered.

*J. W. Wetzel,* with him *Arthur R. Rupley,* district attorney, and *Conrad Hambleton,* for appellee.—The turnpike road company crossed by the railway company defendant is a public highway and the defendant was liable to indictment for nuisance as alleged in this case: Railroad Co. v. Com., 90 Pa. 300; Com. v. Penna. R. R., 117 Pa. 637.

The jury by its verdict upon evidence found by the court, on motion for a new trial sufficient to sustain it, has·determined that the bridge is too low for ordinary public travel and that one of the piers is partially constructed on the traveled way. This is a nuisance under the law for which the defendant can be indicted, and such was the nuisance of which it was convicted.

The case of Danville R. R. Co. v. Com., 73 Pa. 29, so much relied upon by the appellant, is not parallel to this case, and has no application in fact or law.

OPINION BY BEAVER, J., April 25, 1898:

The defendant was indicted in the court below for erecting and maintaining a common nuisance, by the construction, in and over the Harrisburg, Carlisle & Chambersburg Turnpike Road, of " embankments of clay, dirt and stone and two stone walls or abutments facing said highway and an overhead iron bridge called a Y, spanning said highway," and continuously thereafter unlawfully and injuriously permitting and suffering the said embankments, etc., to remain in, on and upon the said public highway.

The objection to the maintenance of the abutments and bridge

was that trade and traffic were impeded and limited in two directions: first, by the limited distance between the stone piers or abutments, and especially by the intrusion of one of the abutments into the roadway of the turnpike, which not only obstructed travel but interfered with the view in both directions; and second, by the distance between the bed of the roadway and the overhead bridge which limited the height of loads of merchandise which could be carried thereunder.

The defendant attempted to justify the erection and maintenance of the abutments and bridge by offering to show that the entrance to the Harrisburg bridge, erected over the Susquehanna river in the vicinity of its Y bridge, was both lower and narrower than the opening between the abutments and the road bed and the iron overhead bridge at the crossing of the turnpike. The rejection of their offers to show this constitutes the first and second assignments of error.

The answer to this is four-fold: First, the obligations and duties of the defendant to the traveling public cannot be measured by the manner in which another corporation discharges its obligations in the same direction. The maintenance of a nuisance by A cannot be justified upon the ground that B maintains a similar nuisance in the same vicinity. Second. Turnpike companies and bridge companies, differing as they do in regard to the specific objects of their creation, the obligations of the one class are not to be measured by the manner in which the other class discharges its duties to the public. Third. It does not appear that all the traffic which passed under the Y bridge necessarily passed through the Harrisburg bridge, and Fourth. The testimony excluded, as shown in the first and second assignments of error was practically admitted later by the court, under the following offer: "We propose to ask the witness on the stand whether he did not measure the width and elevation at the opening of the Harrisburg bridge and some feet inside the Harrisburg bridge; this to be followed by evidence showing that at the time of the location of this Y, the nuisance complained of in the present bill of indictment, the Harrisburg bridge afforded the only means of access from Cumberland county into the city of Harrisburg, and that the opening of the mouth of the bridge and some distance inside the bridge is less than the width and height at

the particular point complained of in this bill of indictment; also to be followed by evidence that the width of the new bridge built across the Susquehanna river is only nineteen feet and a half, for the purpose of showing that the elevation and width at the place complained of in the bill of indictment, exceeds that of the old bridge or the new bridge across to Harrisburg, and to negative any idea of malice on part of the defendant." In respect to this offer the court said: "The evidence will be received, to be considered by the jury in connection with the other testimony in the case, in determining whether or not the defendant has unreasonably abridged and inconvenienced the public use of the locus in quo. The objections are overruled and an exception noted for the commonwealth."

The fourth assignment of error relates to the answer of the court to the defendant's eighth point as follows: "The Harrisburg bridge at the time of the construction of the Y bridge by the Northern Central Railway Co. was the only roadway leading from the turnpike and the lower end of Cumberland county into Harrisburg and the clearance given the Y, being in excess of that in the Harrisburg bridge, must be admitted to have been reasonable and, therefore, is not a nuisance." This point, for the reasons already stated, was properly refused by the court.

The third assignment of error, which relates to the refusal of the court to affirm the defendant's sixth point, cannot be sustained. The point requests the court to charge, as a matter of law, what was clearly a fact for the consideration of the jury and, for this reason, if for no other, the refusal to affirm was entirely proper.

The fifth and sixth assignments of error relate practically to the same question. The answer to the defendant's seventh point, as set forth in the fifth assignment of error, taken in connection with the general instructions upon the subject complained of in the sixth assignment, was correct. The issue was clearly and fairly stated by the court in the following paragraph: "The true question, therefore, is, has the defendant unlawfully invaded the rights of the people? Has it done that in the erection of the bridge which worked injurious results to the public? Has it made an unreasonable obstruction

upon a public highway? Does the bridge complained of unreasonably inconvenience or incommode public travel? If you answer those inquiries in the affirmative, your verdict should be ' guilty.' If in the negative, then it should be ' not guilty.' " It is difficult to imagine how the issue could have been more tersely and clearly put. The facts were undoubtedly for the jury, and the court would have been in error in ·affirming the defendant's ninth point complained of in its seventh assignment of error which was that " under the evidence in this case and the law applicable thereto, a verdict of acquittal should be rendered by the jury."

Upon a careful review of the whole case, we can discover no error of which the defendant has a right to complain. The judgment is, therefore, affirmed.