## Valmont Developing Co., Appellant, v. Rosser et al.

142

Argued January 30, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Evans C. Jones,* with him *Trembath & Trembath* and *Jenkins, Turner & Jenkins,* for appellant.—The bridge in question is being constructed over the Susquehanna River, to replace an old bridge, connecting Market Street in Wilkes-Barre and Market Street in Kingston. The new construction was authorized by the Act of February 14, 1907, P. L. 3: Carrere v. Schmidt, 278 Pa. 457.

The county cannot, in constructing such new bridge, take and occupy private land outside of the line of the former bridge and highway, without first acquiring title thereto: Johnston v. R. R., 245 Pa. 338; Hall v. R. R., 215 Pa. 172.

Under the circumstances, the county has not the right of eminent domain: Carrere v. Schmidt, 278 Pa. 457; Solar Electric Co.'s App., 290 Pa. 156.

The county may not permanently take private land, for a decorative addition to the new bridge, not a necessary part of the approaches and beyond the statutory maximum width of highways.

The railing shutting off access to the highway is illegal: Shannon v. Carbondale, 28 Lack. Jurist 41.

*John H. Dando,* with him *Wilfrid L. Jones,* County Solicitor, and *John J. Hibbard,* for appellee.—The county in constructing such new bridge may take and occupy private land outside the line of the former bridge and highway without first acquiring title thereto: Carrere v. Schmidt, 278 Pa. 457; Deer v. Boro., 220 Pa. 307; Chambersburg Shoe Mfg. Co. v. R. R., 240 Pa. 519; Becker v. St. Ry., 188 Pa. 484; Keeling v. Ry., 205 Pa. 31, 34; Condron v. P. R. R., 233 Pa. 197.

Under the circumstances, the county has the right of eminent domain: Penna. Mut. L. Ins. Co. v. Phila., 22 Pa. Dist. R. 195; Terminal Coal Co. v. P. R. R., 291 Pa. 103; Penn Twp. v. Perry Co., 78 Pa. 457; Com. v. Supervisors, 4 Pa. Dist. R. 468.

The county may permanently take private lands for decorative addition to a new bridge, not a necessary part of the approaches, beyond the statutory maximum width of highways.

*B. W. Davis,* for Borough of Kingston.

OPINION BY MR. JUSTICE KEPHART, March 25, 1929:

Plaintiff prior to 1926 became the owner of a large tract of land lying between Market and Pierce Streets, in Kingston, Luzerne County. A public highway on which the land, now divided into lots, fronts, extended from Market Street by bridge across the Susquehanna River to Wilkes-Barre. The county commissioners, believing the bridge insufficient to accommodate existing travel, petitioned the court of quarter sessions to reconstruct it. The grand jury on January 31, 1919, approved the project and the court below gave a qualified approval without committing it "to any suggested plan or detail of construction, all of which will be determined without haste and after full deliberation." In 1926 a contract was let and approved by the court for erecting the bridge and approaches. The latter extend from the

river bank on Market Street into Kingston 450 feet and adjoin appellant's land 370 feet.

The elevation of the approach at the river bank, the borough limits, is 20 feet and runs out on a regular grade to nothing on Market Street. The average elevation in front of appellant's land is about six feet. Market Street, originally fifty feet wide, is now 93 feet and the approach covers the entire width along appellant's land.

The decorative or ornamental projection outside of the regular lines of the approach extends in a circle into appellant's land an extreme width of forty-nine and one-half feet from the general line, gradually reducing to nothing at the general line, and is one hundred and forty feet long. The extreme width of the approach at the farthest point of the circle, including the width on the other side, is about two hundred feet. A railing or balustrade is erected along the property lines as a protection to pedestrians; it also prevents ingress and egress to and from the land facing it, now below the grade of the approach, and deprives Kingston Borough of a connection with a street along the river, also below grade. The commissioners proceeded with the work until July, 1928, when this proceeding was instituted to enjoin further construction, particularly of certain parts of the bridge.

The reasons given for the injunction were: the county was attempting to take land without acquiring title thereto or without lawful appropriation or condemnation thereof; there was nothing of record to determine the part of appellant's land taken, though entry thereon had been made; the new bridge contained decorative features not a part of the bridge and not necessary for public travel or use, but merely adding beauty and ornamentation, and for that purpose the county took a large piece of appellant's land, for which taking there was no warrant in law; the bridge or street was of greater width than authorized by law; and, in laying out and

building the approach, its grade was so elevated through the Borough of Kingston as to cut off free communication with an important public street necessary for public travel, and with the land of appellant. Other questions raised by this appeal become immaterial and resolve themselves into ones for damages if it is found the county can take the land in question.

The court below, after the hearing, dissolved the injunction and dismissed the bill.

The power of a municipality or a quasi-municipal corporation to appropriate land for roads and bridges or other public improvements must be found in some enabling statute. "The right of eminent domain......is an incident of government and exists in municipal or other corporations only as direct authority from the government by act of assembly may be shown therefor. The exercise of a certain function of municipal government to which the acquisition of real property is necessary will not of itself give rise to the right of eminent domain to condemn property......Acts of assembly granting this right must be construed strictly. The language of the act should be clear and unmistakable, and questions of doubt should be resolved against the existence of this right": Philadelphia's Petition, 60 Pa. Superior Ct. 594, 596; Solar Electric Company's Appeal (No. 1), 290 Pa. 156; Philadelphia's Petition, 253 Pa. 434. It may possibly be that the exercise of certain functions of government might compel the taking of land for the purpose, but here we need not infer an authority to appropriate land to construct bridges, because the legislature by positive enactment has conferred that power, and resort should never be had to an inference of the right of eminent domain, however imperative the demand, where enabling authority may be found in a statute or the inference otherwise avoided. Such power ordinarily will not be presumed to exist: Phillips v. Dunkirk, Warren & Pittsburgh Railroad Co., 78 Pa. 177.

We do not have a record of what took place before the court of quarter sessions, the county commissioners or the grand jury; only a very meagre outline is presented and it does not show the authority pursued. We can only decide the case from this record and statements made in the argument as they supplement the record. Ample power to condemn or appropriate land for the construction of bridges and approaches is lodged in the county under the Act of April 29, 1891, P. L. 31, as amended, aided by the Act of February 14, 1907, P. L. 3, and the Act of the same year, P. L. 523; see Carrere v. Schmidt, 278 Pa. 457; the Act of May 28, 1913, P. L. 368, and also Westmoreland Chemical & Color Co. v. Public Service Commission, 294 Pa. 451, 462. The approach is part of the bridge. The Act of 1891 states that the county is authorized, after resolution, to construct a public bridge between any city, borough or township, and to that end may take and appropriate property; it requires plans to be prepared and submitted to the court of quarter sessions for approval. We conclude from the foregoing acts of assembly, together with our decisions above noted, that ample power is given to appropriate appellant's lands for the bridge and the approaches.

The words "take and appropriate," or others of similar import, in eminent domain statutes, contemplate an orderly and regular proceeding by the authorities in whom the power is lodged. It has in view a precedent resolution, ordinance or other affirmative act, defining the scope and extent of the proposed taking, with the purpose for which it is to be exercised. Members of council or the mayor, or the county commissioners individually or collectively, cannot in an informal manner take the action necessary to complete a lawful appropriation. Formality of procedure is here essential just as in the case of condemnation by quasi-public corporations: Foley v. Beech Creek Extension R. R. Co., 283 Pa. 588, 594. In that case, the adoption of the center line, with the statute fixing the outside lines, determined

148

the quantity of land taken by the company. Here, where a bridge is to be reconstructed and additional land is necessary for approaches, there must be some act descriptive of the proceeding; the land taken, with the purpose for so doing, should be recorded on the minutes of the county commissioners and filed with the proceedings of the court. The work is more than an engineering detail as in the taking of land for a railroad by quasi-public corporations, where the center line determines the width; here the county in appropriating additional land beyond street limits for a bridge must give ample information as to what it takes. It is not necessary that a bond should be filed, but an effort to reach an agreement ought to be made with the owners, and, if that is ineffectual, either party may ask for the appointment of viewers.

It was conceded there is no resolution of appropriation or taking and no plan or map of the property has been made or filed, and there is, therefore, nothing of record to show to what extent appellant's rights have been interfered with. It has, however, permitted the bridge to be so far constructed that it would be inequitable and unjust to grant the relief prayed for; we do not, on the other hand, wish to be understood, in the order to be made, as countenancing such procedure generally in the construction of public works. A modification of the decree will be suggested which will preserve all rights and place a modicum of legality on the project.

Complaint is separately made that no authority exists for the appropriation of the land necessary for the decorative feature of the bridge, and that the Acts of June 13, 1836, P. L. 551; June 7, 1907, P. L. 452; April 6, 1921, P. L. 111, and April 13, 1927, P. L. 184, limit the width of highways. This is not an effort to build a highway, but to construct an approach with an enlargement that may become a matter of vital importance in the use and operation of the bridge. We find no limitation in the acts referred to as to the width of bridges or their

approaches; though the latter may be part of the highway, the taking for it is under authority to construct a bridge. The fact that the bridge at this point may be of a greater width than that allowed for highways is not determinative of the question as to the building of these extensions.

Municipalities plan for the future and, unless specifically limited, are bound only by factors of reasonableness. Their projects may reasonably include such useful, ornamental and artistic designs as are consistent with progressive architectural demands and do not unnecessarily intrude on private ownership. The county under the various acts had authority to elevate and lengthen the approach to the bridge into the Borough of Kingston and it also had power to enter and occupy sufficient ground "for approaches," without any attempt at a definition or restriction of what would constitute an approach. Counties may, within reason, appropriate such lands as may be deemed reasonably necessary for art and decoration. What has been done here is not unreasonable, is not such an abuse of power as would cause a court of equity to stop it even if not started.

Kingston Borough petitioned to intervene to protect the highways therein. Equity Rule 25 permits any person having an interest in pending litigation to intervene at any stage of the proceedings. Generally speaking, the question of intervention is a matter within the sound discretion of the court below, which ordinarily will not be interfered with on review, unless there is a manifest abuse of discretion: Bole v. Belden Transmission Co., 239 Pa. 1; Streuber's Appeal, 229 Pa. 184; Johnston v. Markle, 153 Pa. 189. In the cases cited, while the action of the court below was sustained in refusing leave to intervene, we decided the cause of intervention, in each case, on its merits. Here the petitioner is a municipal corporation within whose limits a part of the bridge is being constructed. The proposed balustrade, if continued, will permanently shut off the approach onto

Market Street from the Parkway, the latter a part of the borough's system of public highways. The borough has a decided interest in the adjudication of this question and asserts a public right in protecting its highways from unlawful encroachment. Equity has assumed jurisdiction over the subject-matter, and the rights of all persons in connection with this improvement should have been determined in one proceeding. No reason is given for refusing this very meritorious request and the court below was in error in so doing; this, however, will not affect the ultimate determniation of the matter before us.

Where there is a conflict of authority between a borough and a county, ordinarily that of the county must be taken to be superior unless the legislature determines otherwise. It is the larger unit of government under the state and comprises within it the borough. Its powers and duties generally extend to, cover and benefit the land and people in the borough as well as those within the larger unit. When charged with a duty, it cannot be impeded in its acts by lesser units of government because of a conflict of powers. The superior right must rest in somebody,—here it is the county. When it projects the bridge into Kingston and its work interferes with the highways there, the Borough of Kingston must accommodate itself to that interference. Of course the county may not construct public works in such a manner as permanently to shut off access from transverse highways in the borough; these highways, brought up to a proper grade so as to make them safe for public travel, may be joined to the approach regardless of the balustrade or railing, which must be removed. The borough cannot be denied this right.

Likewise it is beyond the power of any municipality permanently to close its highways to the use of the abutting property owners; as well might the City of Philadelphia place a balustrade or railing close to the property line on Broad Street from Chestnut to Walnut

forbidding property owners the privilege of entering the street in any manner. Any unreasonable and unauthorized obstruction of a street is a nuisance, per se, regardless of whether the fee of the street is in abutting owners (44 C. J. 1006; Kelly v. Com., 11 S. & R. 345; Thomas v. Inter-County St. Ry., 167 Pa. 120; Green v. Thresher, 235 Pa. 169; Com. v. McNaugher, 131 Pa. 55; Lamb v. Pike Twp., 215 Pa. 516; Philadelphia v. Teller, 50 Pa. Superior Ct. 260, 265; Com. v. Northern Cent. Ry., 7 Pa. Superior Ct. 234) ; this is so even though the nuisance is caused by a municipality. The above general rule must be taken always in connection with the physical contour of the ground or the proposed construction of a street as it relates to other streets and adjoining properties. In the present case we have an approach which has a perpendicular wall extending a distance of 450 feet, beginning at 20 feet and ending at nothing. It was highly proper for the county to erect a balustrade, along what may be called the property line and intersecting streets below grade, as a means of protection to pedestrians using the sidewalk; but when the transverse streets are raised to the grade of the approach so as not to be dangerous to traffic, and the surrounding property is likewise raised sufficiently to do away with any danger, then the county cannot maintain the balustrade to prevent access to the properties from the street. Of course vehicular traffic could use the sidewalk only at the intersection, but pedestrian traffic is not to be denied the right of ingress and egress to and from adjoining lots when they are brought to grade or near grade so as not to be dangerous to the traveling public. Therefore, the position of the borough, as an intervenor, to connect its transverse streets with Market Street, and the position of the appellant with respect to permitting access to its property when brought to or near grade, must be sustained; but the balustrade is not to be taken down until the appellants have their various properties in the condition as herein indicated. At the intersection of the

highways, the proper construction of the Parkway and traffic regulations will obviate danger to traffic.

It has been stated that the county in taking the land proceeded under the supposed authority of the City of Wilkes-Barre. This is a rather novel suggestion, for there is not a line of evidence to show that the City of Wilkes-Barre ever condemned anything. Certainly the resolution authorizing its engineer to appropriate appellant's land is not sufficient. From this record, it appears that the City of Wilkes-Barre had no rights therein. Appellants had never parted with title nor had they been paid damages. It would be an entirely new principle that one corporation could justify its right to take land because another corporation had started condemnation proceedings that had never been finished and by so doing deny to the owner the compensation safeguarded by the Constitution. Appellants in this respect are in a position as though the City of Wilkes-Barre had not acted and are entitled to the full compensation allowed by law.

We affirm the court below in denying an injunction. Defendant has not been guilty of laches with respect to the land necessary for decorative features. It was the subject of discussion until a short time before the bill was filed and this was the principal complaint. We modify the decree so as to sustain appellee's contention as to these features unless the county commissioners will adopt and file resolutions of appropriation for the land occupied, setting out with sufficient certainty their purpose, with a description of the land taken therefor. This, counsel for the county have agreed to do. The bill will be reinstated for the purpose of carrying out the decree of the court below as modified. Appellant may have viewers appointed under the Act of April 29, 1891, P. L. 31, to ascertain its damages as related to the condition of its land before and after the taking, indicated by the construction on the ground. As thus modified, it is affirmed, costs of this proceeding and that in the court below to be paid by the County of Luzerne.