Valmont Development Co., Kingston Borough
(et al., Appellants), *v.* Wall et al.

Argued April 14, 1931.   Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Evans C. Jones,* with him *Trembath & Trembath* and *Jenkins, Turner & Jenkins,* for appellant, Valmont Development Company.—The attempted condemnation of the land designated as Parcel No. 3, by the county commissioners, was not made in good faith, but was a specious attempt to circumvent and nullify the decision of the Supreme Court, in this present case, rendered March 25, 1929.

The building of the permanent railing by defendants across the intersection of the Parkway and Market Street and along the line of plaintiff's abutting property is an illegal encroachment, a nuisance per se, and should be removed by mandatory injunction: Valmont Development Co. v. Rosser, 297 Pa. 140; Blainesburg v. West Brownsville Road, 293 Pa. 173.

The proposed driveway is not in law an approach to the Market Street Bridge: Westfield Boro. v. Tioga Co., 150 Pa. 152; Westmoreland Chemical Co. v. Pub. Ser. Com., 294 Pa. 451; Valmont Development Co. v. Rosser, 297 Pa. 140; Terminal Co. v. R. R., 291 Pa. 103; Com. v. Loomis, 128 Pa. 174.

The action of the county commissioners in attempted condemnation of the land designated as Parcel No. 3 is ultra vires, and the county commissioners should be enjoined from entering upon the same: Westmoreland Chemical Co. v. Pub. Ser. Com., 294 Pa. 451; Carrere v. Schmidt, 278 Pa. 457; Valmont Development Co. v. Rosser, 297 Pa. 140.

Act of assembly granting right of condemnation must be construed strictly—questions of doubt should be resolved against the existence of the right: Phila's Petition, 60 Pa. Superior Ct. 594; Solar Elec. Co.'s App., 290 Pa. 156; Phila.'s Petition, 253 Pa. 434; Valmont Development Co. v. Rosser, 297 Pa. 140, 146.

*B. W. Davis,* for appellant, Kingston Borough.—The county commissioners are not clothed with authority permanently to close the intersection of Parkway and Market Street, Kingston; and.the building of a railing across the intersection is a nuisance per se and is restrainable by injunction: Thomas v. Ry., 167 Pa. 120; Lehigh Coal Co. v. Ry., 167 Pa. 75; Green v. Thresher, 235 Pa. 173; Com. v. McNaugher, 131 Pa. 55; Lamb v. Twp., 215 Pa. 516; McNerney v. Reading, 150 Pa. 611; Phila. v. Teller, 50 Pa. Superior Ct. 260; Com. v. Ry., 7 Pa. Superior Ct. 234; County Commissioners' Petition, 255 Pa. 88.

The borough's right to injunction to restrain such obstruction is res adjudicata by the decision of the Supreme Court in Valmont Development Co. v. D. M. Rosser et al., County Commissioners, 297 Pa. 140.

The jurisdiction to vacate and to lay out and open streets within the Borough of Kingston is wholly in the town council and not in the county commissioners; and the action of the county commissioners in adopting the resolutions of April 18th and April 22, 1929, was ultra vires, no title or right to Parcel No. 3 being thereby acquired: Gailey v. Trust Co., 283 Pa. 381; Blainesville-West Brownsville Road, 293 Pa. 173.

*John D. Farnham,* for appellant, John C. O'Donnell.

*John H. Dando,* with him *John J. Hibbard,* County Solicitor, for appellee.—This bridge and the lands involved here are in full view from the chambers of the jurists who decided the case below. They are familiar with the physical facts; they heard or read the evidence; they listened to the arguments; the decision written by Judge COUGHLIN was approved by the entire court; the owners of the land can be and will be fully compensated, if not by agreement, then by law; the beauty of the bridge and its environment has been preserved; all public highways and by-paths have been conserved and no

voice, but that of the land corporation, has been heard to complain; every step of the commissioners has been taken mindful and respectful of the decision of this court and for the public welfare.

OPINION BY MR. JUSTICE SIMPSON, June 27, 1931:

This is a sequel to Valmont Development (misprinted as Developing) Co. v. Rosser, 297 Pa. 140, to which those interested are referred for a history of the prior proceedings.

The County of Luzerne determined to build a county bridge, to take the place of the Market Street Bridge over the Susquehanna River which had become insufficient to accommodate the public. Plans were prepared which showed that it would extend from Wilkes-Barre to the heart of Kingston, and would be longer, wider and higher than the old structure. These plans were submitted to and approved in turn by the grand jury and the court. Some time afterwards, the development company purchased a tract of land abutting on the bridge, divided the tract into streets and lots, and submitted the plan to the Borough of Kingston, which accepted the streets upon it, one of which is named the Parkway and is the storm-center of the present controversy. It is plotted to run at right angles to and to terminate at the bridge, which it was intended to reach by a somewhat steep grade, but the grading had not been completed when the original bill in equity herein was filed. In our prior opinion we held that the borough was entitled to have the Parkway connected with the bridge, so that traffic could pass from one to the other, but we did not decide that such connection could not be otherwise than at a right angle, nor that the borough was the authority to determine how it should be made.

When the record on that appeal was returned, the county commissioners rightly concluded that, as they built the bridge and the approach, it was their duty to make the connection as part of the approach, and that

this should be done in such a way as to cause as little disturbance and danger to traffic as was reasonably possible. How it could best be accomplished was not an easy problem to solve. Every day, approximately 16,000 vehicles cross the bridge, which means that there are two parallel lines of traffic thereon, traveling in opposite directions, on each of which lines five vehicles, on an average, pass over the bridge every minute of the day and night, and probably half as many more each minute, if only the busy parts of the day are considered. If a right-angled connection should be made between the street and the bridge, as appellants claim must be done, the congested line of traffic on the bridge going from Wilkes-Barre to Kingston would have to be crossed by vehicles coming up the Parkway to go to Kingston, and also by those coming from Kingston to travel down the Parkway. This would seriously interfere with the bridge traffic, and, owing to the grade of the Parkway, might well result in accidents at the junction point, especially in the case of trucks and other heavy vehicles intending to pass on to the bridge from the Parkway.

The county commissioners finally decided that the best way to minimize these interferences and dangers, would be to split the traffic intending to pass from one to the other, so that vehicles coming up the Parkway to use the bridge in the direction of Kingston, would be diverted to the right just before reaching the bridge, and would use a newly-constructed approach immediately adjoining and paralleling the bridge, on a slightly ascending grade until it was on the same level as the bridge, and should then meet with and enter the traffic going towards Kingston; and that vehicles coming from Wilkes-Barre, intending to use the Parkway, should continue on the bridge until they reached the same junction point, and should then turn and go over the same branch of the Parkway. So, also, vehicular traffic on the Parkway intending to go to Wilkes-Barre, should pass under an archway of the bridge, ascend a like easy grade on its

opposite side, until its level was reached, and should then turn into the traffic lane on the bridge going towards Wilkes-Barre; and those coming from Kingston, intending to use the Parkway, should continue on the bridge until they reached the latter junction point and should then turn and go along that branch of the Parkway. The effect of this arrangement will be to have no crossings of the traffic lanes on the bridge, no left-hand turns, and easy ascending and descending grades to and from the bridge, which could readily be traveled even by heavily-laden vehicles.

No difficulty arose in accomplishing this wise purpose, so far as the property on one side of the bridge was concerned, it being a public park; but to do so on the other side required the condemnation of a strip of land directly adjoining the bridge, 250 feet wide by 454.73 feet long, and belonging to the development company. To prevent, inter alia, this intended condemnation, that company filed the present supplemental bill in equity, which was later joined in by the Borough of Kingston, and a taxpayer of the county, on behalf of himself and all other dissatisfied taxpayers, as intervening plaintiffs. In due course the bill was dismissed by the court below, and from its decree these three appeals were taken, one each by the original and intervening plaintiffs.

In this court, appellants contend, inter alia: (1) That the action of the commissioners was a subterfuge to circumvent and nullify our previous decision; but this is their error and not the court's, as we have already shown; and (2) the commissioners had no power to condemn land for the purpose stated. This latter point was decided against appellants in our previous opinion (297 Pa. 147), and we have been given no valid reason why we should reconsider our conclusion there stated. Appellants assert, however, that it is "in direct conflict with [section 776 of] the Act of second May, 1929, P. L. 1278, 1396,......itself a verbatim reënactment of sec-

tion 16 of the Act of May 24, 1917, P. L. 276." It is difficult to understand how a decision can be in "direct conflict" with a statute which was not in existence at the time the decision was rendered. It is true, however, that section 776 of the Act of 1929, is "a verbatim reënactment of section 16 of the Act of May 24, 1917," but neither the latter, nor the former, has any bearing on this case. Each provides that "Should any board of county commissioners, in the exercise of the powers herein conferred, deém it necessary or advisable to enter upon any street or public highway in any city or borough,......for the purpose of constructing or maintaining any such bridge, with its approaches and other appurtenances, or otherwise, the consent thereto of such city or borough, by ordinance, shall be first had and obtained." So far as construction is concerned, obviously this means a street or highway in existence before the plans for the bridge were approved by the grand jury and the court, for otherwise a disagreeing city or borough, after much expense had been incurred by the county, might block the construction of a bridge by subsequently plotting and opening a street across the line of the bridge, and then refusing to consent to its interference with the new street. Aside from all else, our conclusion on this point is made clear by the fact that municipal consent must be "first had and obtained." As already stated, the Parkway did not become a borough street until long after approval of the plans of the bridge, and hence the statute does not affect the present controversy. We are by no means satisfied that section 16 of the Act of 1917, when construed in conjunction with section 1 thereof, or that section 776 of the Act of 1929, when construed in conjunction with section 771 thereof, as each of them must be, would have any effect on the situation here existing, even if the Parkway had been a plotted street of the borough before the plans for the bridge had been approved, but, in view of what we have said, this point need not be considered at the present time.

Appellants further contend that the method adopted by the county commissioners in order to avoid the interferences and dangers which we have hereinbefore set forth at some length, does not result in an approach to the bridge, and is, therefore, beyond the power of the commissioners. We do not agree with them that a bridge approach must be substantially a continuation of the bridge in the same general direction, or that there can be only two such approaches, but we need not argue the point, since section 1 of the Act of 1917 expressly gives to the commissioners the right to construct "other approaches."

The final question is: "In building a bridge approach may county commissioners permanently maintain a railing......along the property line of an abutting owner?" In our former opinion (297 Pa. 151), we said that "the position of the appellant with respect to permitting access to its property when brought on or near grade, must be sustained; but the balustrade is not to be taken down until the appellants have their various properties in the condition" therein described. Nothing need be added to that statement, except to say that, so far as the present record discloses, the time referred to has not yet arrived, and, when it does, other conditions may be present which will affect that right.

The decree of the court below is affirmed and each appeal is dismissed at the cost of the appellant therein.