## Woodring *versus* Forks Township.

An owner of land through which a public road passes, may cut a passage across the road for the purpose of draining his land, or leading water to his mill, because the land is his own and he may use it for all legitimate purposes.

But in doing so, he has no right to injure the public easement, and to preserve that right he is bound not only to construct bridges over the ditches where they cross the highways, but also to keep them in repair.

The duty of keeping the bridges in repair is as imperative as the original obligation to construct them, because he erected them for his own benefit.

A subsequent owner of the land, who continues a watercourse across a highway, for the use of his mill, and thus renders a continuance of the bridge necessary, is liable for the repairs of the bridge.

The proceedings by indictment, and for the statutory penalty for obstructing a road, are designed more as punishments for offences than remedies for the injury caused by them, and do not preclude the public from repairing the road in the first instance and then bringing an action to recover against the party liable to make the repairs.

It is sufficient that the work was done on the credit of the township, although not actually paid at the time suit was brought.

Where the suit was originally brought before a justice of the peace, and on appeal the parties went to trial on a declaration "for money had and received," it was considered a waiver of all objections to the form of the action or the jurisdiction of the justice.

ERROR to the Common Pleas of *Northampton county.*

This was an action brought before a justice of the peace by the Township of Forks against Peter Woodring, to recover the sum of $34.57 expended by the supervisors of the township in making repairs to certain bridges, which repairs it was alleged the defendant, Woodring, was bound to make. The case was brought

[Woodring *v.* Forks Township.]

to the Common Pleas by appeal, and *narr.* filed, which, under the rules of court for the third judicial district in all appeals from justices of the peace, is in *indebitatus assumpsit* for money had and received by the defendant to and for the use of the plaintiff. The defendant was the owner of a mill, and the bridges in question were over the head-race which conveyed the water through his own land to his mill at the points where it crossed two public roads. These roads were laid out and used before the race was dug. About the year 1806, a man by the name of Andrew Stocker, who then owned the mill, dug the race so as to obtain a greater fall of water, and placed bridges over it at the points where it crossed the roads, and kept them in repair so long as he continued owner of the mill. The premises passed through several owners, all of whom it was alleged had successively made the necessary repairs to the bridges.

The defendant became the owner of the mill property in 1842. In the year 1849 the bridges became dilapidated, and, according to some of the witnesses, dangerous for heavily laden teams, and the supervisors of Forks township, in which they were situated, notified the defendant to have them repaired. Having failed to do so, the supervisors made the repairs at the expense of the township, and thereupon this suit was brought.

The defendant submitted the following points :—

1st. That there has been no legal obligation shown requiring defendant to keep these bridges in repair, and therefore plaintiff cannot recover.

2d. That no legal presumption arises to make defendant liable, if it even has been proved that the former owners of this mill site did repair these bridges.

3d. That, if even defendant was bound to keep these bridges in repair, this action is not the way to compel him, and cannot be sustained. If liable, he is subject to indictment for refusing, and not to a civil action for the recovery of the amount expended by the township.

4th. That, there being no proof that, as defendant ever requested the township to make these repairs, their so doing was a voluntary courtesy, so far as defendant was concerned, and this action cannot be sustained.

5th. That, the proof being that the payment for these repairs had not been made by plaintiff, when this suit was brought, there can be no recovery by them in this suit.

6th. If even the court should be of opinion that, under the law and evidence in this case, defendant was bound to keep these bridges in repair, and could be sued in an action like this, for work done upon them by the supervisors, plaintiffs cannot recover unless they have proved that there was an actual necessity for the work that was done.

[Woodring *v.* Forks Township.]

The court below answered the 4th and 6th points of defendant in the negative, and the 5th in the affirmative. And on the questions arising on the first three points, charged that the action might be sustained as brought, reserving the point whether Woodring, the defendant, by virtue of the agreement of his predecessors in the estate to repair, is liable in this action for money expended by the plaintiff in repairing the bridges?

The jury found for the plaintiff $43.66. A motion was made for a new trial, the rule for which, after argument, was discharged, and judgment entered for the defendant on the point reserved, *non obstante veredicto.*

The error assigned was, That judgment should have been entered on the verdict in favour of the plaintiff.

*Green,* for plaintiff in error.—The court had no power to enter judgment *non obstante veredicto.* in this case. At common law it is confined to the case of where the defendant pleads by way of confession and avoidance, and the *fact* thereby put in issue is found for him, but the plaintiff on retrospect deems the matter pleaded unavailable as a defence; he moves for judgment notwithstanding the verdict: *Steph. on Pl.* 129, ed. 1831; 1 *Ch. Pl.* 656-7, ed. 1851, and notes. The practice in this state is confined to the District Courts of Philadelphia and Allegheny, under legislative enactment.

2. But, if the court had the power to reserve the point and enter judgment without regard to the verdict, we contend that it was erroneous. Two points are raised: Is Woodring liable? If so, is he liable in this action?

In digging this race or channel, Stocker was guilty of a nuisance, for which he was answerable both civilly and criminally: Rex *v.* Inhabitants of West Riding, Yorkshire, 2 *East* 342-350. Being made for a private purpose, the obligation to repair follows: 2 *Roll. Ab.* tit. *Bridges,* 368—"If a man erect a mill for his single profit, and make a new cut for the water to come to it, and makes a bridge over it, and the subjects used to go over it as over a common bridge, this bridge ought to be repaired by him who had the mill, and not the county, because he erected it for his own benefit." This case was decided early in the 14th century, but has been recognised and adopted as sound law from that day to this. See *Bac. Abr.* tit. *Bridges.* In the case of Rex *v.* The Inhabitants of West Riding, Yorkshire, 5 *Burr.* 2594, it was held: "If a bridge built by the county, is of utility to it, county to repair; but if built by a private person, and he has the benefit of it, he to repair." The decision in Rolle is quoted in this case, and recognised as the law, decided in 1770. In 1802 a case of same name, but a different bridge, the same principle: 2 *East* 342.

[Woodring *v.* Forks Township.]

The liability to repair is made to depend on the question of public advantage or individual benefit, secured by the erection and maintenance of the bridge.  The same distinction is recognised in Rex *v.* Kent Inhabitants, 2 *M. & S.* 513; Rex *v.* Kenison, *Id.* 526, cited in *Woolrich on Ways* 202–3.

In Perley *v.* Chandler, 6 *Mass.* 454, the court said: " But when a way has been located over private land, if the owner should afterwards open a watercourse across the way, it will be his duty, at his own expense, to make and keep in repair a way over the watercourse for the convenience of the public :" and Diggert *v.* Schenk, 23 *Wend.* 446.  If therefore the original party incurs the penalty of a nuisance and the obligation to restore and maintain the highway, by what legerdemain can one who continues the nuisance be relieved from the same obligation?  Length of time will not legalize a nuisance : Weld *v.* Hornby, 7 *East* 199 ; Folkes *v.* Chad, 3 *Doug.* 340.  The obligation rests upon him who derives the profit, and is founded upon consideration or profit : *Wool. on Ways* 79 and 82.

These views and cases are not in conflict with the point decided in Meadville *v.* The Erie Canal Co., 6 *Harris* 66, for in that case no obligation rested upon any individual, and of course rested upon the public.  There being no liability on the Commonwealth, none passed to its grantee, the Erie Canal Company.  In Rex *v.* Shimer, 5 *Esp.* 219, where one repaired for twenty-five years it was evidence of his liability.

Is Woodring liable in this action?  It cannot be disputed that it was the business of the supervisors to keep these highways in repair : *Purd.* 722, pl. 40.  The public interests must not suffer while private disputes are discussed: *Wool. on Ways* 205 ; 13 *Mass.* 294 ; Pottsville *v.* Norwegian Township, 2 *Harris* 546.  The case is therefore fully within the principle of the last cited case.

Where, in a given state of facts, the law raises a legal obligation to do a particular act, and there is a breach of that duty and a consequent damage, *assumpsit* may be maintained upon a promise implied by law to do the act: 1 *Ch. Pl.* 155.  But it is contended and earnestly argued, the only remedy was by indictment.  It does not follow, if indictable, that the civil remedy is thereby defeated.  This ground was overruled in Dygert *v.* Schenck, before cited.  The judgment of the court is based upon the Act 13th June, 1836, § 68, *Purd.* 726, pl. 93, by which a penalty of from $10 to $40 is imposed for obstruction or other nuisance, and therefore no other remedy can be resorted to.  That act contemplates nuisance by positive acts of commission; and mere omissions, as the neglect to make these repairs, are not embraced in its provisions.  This is only a means of punishment, but does not furnish a remedy for the injury the township has sustained in being compelled to make the repairs.  The imposition of penal

[Woodring v. Forks Township.]

consequences affords no kind of substitute for the civil remedy theretofore possessed by them.

*J. M. Porter* and *M. Goepp*, for the defendant in error.—The counsel for the plaintiff in error denies the power of the court to enter judgment *non obstante veredicto*, upon points reserved. It has been so frequently exercised, and so generally sanctioned by this court, when rightly exercised, that it is too late now to question its existence. The cases of Edmondson *v.* Nichols, 10 *Harris* 74, Stewart *v.* Freeman, *Id.* 120, and Lyons *v.* Divellis, *Id.* 185, were all passed upon, and the practice sanctioned by this court. The Acts of Assembly, cited for plaintiff in error, conferring the power on the District Courts, recognise a pre-existing practice, and were only needed to enable the points reserved by a single judge on the trial to be passed upon afterwards by the *whole* bench; a provision not necessary in the Common Pleas, where the trials are held by all the judges, and where there is but one judge required to be learned in the law. The verdict must be taken to have established these facts :—

1. That the roads were there before the mill-race.
2. That the former owners repaired the bridges; and
3. That the repairs made by the township were necessary.

From these there arises this single question of law. Was there any liability on Woodring that could be enforced by a civil suit before a justice of the peace? The court below held there was none. It is conceded that in order to recover, the township must establish a contract. The plaintiff endeavours to construct one, by showing that the supervisors are liable to indictment if the bridge is out of repair, and they may repair, and the law, from the liability of the digger of the race, will imply a contract to reimburse them. The court seemed to think there might be something akin to a covenant running with the land, that would be binding on the successive owners or tenants of the premises. Neither position is tenable. We do not admit that he who digs a race under a road and bridges it, thereby becomes liable to maintain the bridge. The digging of the race is a nuisance which the supervisors may abate, by either filling it up or bridging it. If the owner bridges it the nuisance ceases, although he might be indicted for the past offence until the limitation barred the prosecution.

If the bridge afterwards becomes ruinous, can he be held guilty of a new nuisance when he has done nothing? The law has intrusted the repairs upon the highways to others; and in Pennsylvania, the law does not deliver over the care of highways and bridges in any case to individuals, but looks to the supervisors alone for the performance of that duty. In England, the liability to repair arises in three ways: 1. *Ratione tenuræ, Wool.*

[Woodring *v.* Forks Township.]

*on Ways*, 80. In Pennsylvania we have no tenure, but free and common socage. 2. By virtue of enclosure. 3. By encroachment: *Woolrich C.*, note *h;* Rex *v.* Stoughton, 2 *Saund.* 160. The doctrine of enclosure has no application with us; and as to the encroachments, they would be simply nuisances. As to bridges the cases are numerous, but the result is that no individual is bound to repair except *ratione tenuræ*, or by prescription. In our state there is, properly speaking, no such thing as prescription: Young *v.* Collins, 2 *Bro.* 293. In this case all the transactions are within the memory of man: Commonwealth *v.* McDougal, 16 *S. & R.* 401.

The English authorities, cited for the plaintiff in error, do not establish that such a liability would arise there. None of them seem to be cases where a race was dug under a previously existing highway and a bridge built over such race; although Lord ELLENBOROUGH, in the Keshbeck Bridge Case, supposes the case from Rolle to have been of that description. But our system of road laws differs so entirely from the English, that it would be no binding authority. The cases of Perley *v.* Chandler, and Dygert *v.* Schenck, although they recognise such a liability, differ from our case that there the question was as to the liability of the party who originally dug the race. There is therefore no direct authority upon the point; and upon principle it is against the whole spirit of our road laws, that the duty of keeping any part of our highways should be imposed upon or intrusted to individuals. When Stocker dug this race he committed a nuisance. The supervisors at that time might have filled it up. If they let him bridge it and took no covenant running with the land to repair, it was their own fault and neglect. When it became out of repair, the original digger might have been indicted, inasmuch as the nuisance would relate and be one continuous act, but his descendants and assigns in the third and fourth generation must be held guiltless. The remedy, if any, is only by indictment: *Wool.* 52, 5 and 6; *W.* 4, ch. 50, § 94; Groffin *v.* The Commonwealth, 3 *P. R.* 502; Commonwealth *v.* Edge, 7 *Barr* 275; The People *v.* The Corporation of Albany, 11 *Wend.* 543; Reading *v.* The Commonwealth, 1 *Jones* 196.

The action of *assumpsit* will not lie: Roxbury *v.* Worcester Turnpike Co., 2 *Pick.* 41; McClure *v.* McClure, 1 *Barr* 378; 3 *East* 505; 1 *Selw. N. P.* 66; 1 *T. R.* 20; Mumakating *v.* Wakeel, 14 *John.* 87; Jones *v.* Wilson, 3 *Id.* 433; Beach *v.* Vanderburg, 10 *Id.* 361; Thompson *v.* Gardner, 10 *Id.* 404; Pidcock *v.* Bye, 3 *R.* 187.

The opinion of the court was delivered by

LEWIS, C. J.—There is no Act of Assembly authorizing the Court of Common Pleas of Northampton county to enter judgment

[Woodring v. Forks Township.]

*non obstante veredicto*, on a point of law reserved at the trial. But, as the judgment is to be reversed for error in the solution of the point reserved, it is not necessary to decide the question whether such a judgment can be entered without an Act of Assembly conferring the power.

We are to take it as settled by the verdict, that the two public highways were in existence before the mill-races were dug across them—that the said races were dug for the benefit of the mill, by the former owner of it, and that they are continued by the defendant below for the same purpose. We are also to assume that the bridges have heretofore been kept in repair by the former owners of the mill. From these facts an agreement to keep them in repair may be implied. A man who owns the soil on which the public have a highway has a right to enjoy his property in every way that may promote his interest or convenience, so that he takes care not to injure the public easement. "*Sic utere tuo ut alienum non lædas*," is the maxim which applies in such cases. He may cut a passage across the road for the purpose of draining his land, or leading water to his mill, because the land is his own and he may use it for all legitimate purposes. But, as he has no right to injure the public easement, he is bound, in order to preserve that right, not only to construct bridges over the ditches, where they cross the highways, but also to keep them in repair. The duty of keeping such bridges in repair is as imperative as the original obligation to construct them. He could not be permitted to cut the ditch without erecting the bridge. He is bound to keep the bridge in repair, " because he erected it for his own benefit." "*Pur ceo que il ceo erect pur son benefit demesne :*" Bowbridge and Channel Bridge v. Le Prior de Stratford, 8 Ed. 2, cited in *Rolle's Abr.* 363, tit. *Bridges ;* Perley v. Chandler, 6 *Mass. Rep.* 454; Dygert v. Schenck, 23 *Wend.* 446. It follows from these principles that a subsequent owner of the land, who continues a watercourse across a highway, for the use of his mill, and thus renders a continuance of the bridge necessary, is liable for the repairs of the bridge. There was, therefore, error in giving judgment for the defendant on the point reserved.

The Act of 6th April, 1802, 3 *Smith's Laws* 512, imposing a penalty for committing a nuisance in the highway, has never been construed to supersede the punishment by indictment at common law : 11 *S. & R.* 345. The Act of 13th June, 1836, sec. 68, expressly preserves the latter remedy, in addition to the other. But those proceedings are designed more as punishment for offences than remedies for the injuries caused by them. They do not therefore preclude the public from repairing the highway in the first place, and then bringing an action to recover the expenses of such repairs against the party who is liable for them. It is the duty of supervisors to keep the roads and township bridges

[Woodring *v.* Forks Township.]

in repair. The public interest requires that this duty be promptly performed. The people are not to be obstructed in their right of passage until the termination of litigation with a wrongdoer. The obligation to keep the roads and bridges in repair gives the township a right of action against all persons whose neglect of duty has rendered the services of its supervisors in this respect necessary: Pottsville *v.* Norwegian Township, 2 *Harris* 543. It is not necessary that the township should prove that the expense of the repairs was paid before suit brought. It is sufficient that the work has been done on the credit of the township. The defendant has nothing to do with the question whether the township has been able to pay its debts or not. A stranger, who is under no obligation to repair the bridges, could not recover from the defendant for expenses voluntarily incurred. The creditors of the township, for work done at the request of the supervisors, are strangers and volunteers, so far as regards the defendant below. They could maintain no action against him for these services. He may therefore feel perfectly safe in paying the just demand of the township.

But it is supposed by the defendant in error that the form of the action, and the want of jurisdiction in the justice, present objections to the plaintiff's recovery. It must be remembered that when the cause came into the Common Pleas, by appeal, the parties went to trial without objection, on a declaration for "money had and received," without any regard to the true nature of the action. Such a proceeding is a waiver of all objections either to the form of the action, or to the jurisdiction of the justice. It is in the nature of an amicable action, with an agreement to waive all such questions, and to try the case on its merits.

We perceive no reason why the plaintiff in error should not have judgment upon the verdict. But, as the defendant below may have grounds for a writ of error, we do not enter the final judgment against him here; but reverse the judgment for the defendant below, and remit the record for further proceedings according to law.

Judgment reversed and *procedendo* awarded.