William P. Hopkins *v.* Catasauqua Manufacturing Company and Nathan Trotter and J. S. Elverson, Receivers, Appellants.

*Railroads—Damages—Equity—Act of June* 19, 1871.

Under the Act of June 19, 1871, P. L. 1360, a court of equity has jurisdiction in the suit of an abutting property owner to compel a manufacturing company without the right of eminent domain to remove a railroad which it has constructed in a street on which the plaintiff's property abuts.

Argued, Feb. 2, 1897. Appeal, No. 491, Jan. T., 1896, by defendants, from decree of C. P. Lehigh Co., Jan. T., 1896, No. 2, on bill in equity. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction.

ALBRIGHT, P. J., filed the following opinion:

1. At the time of the filing of this bill the plaintiff was and still is the owner in fee of a lot of ground on the east side of Front street, which runs north and south, in the borough of Catasauqua, extending along said street about 87 feet, and in depth about 200 feet; on it is a dwelling house, which was and is the residence of the plaintiff.

2. Defendant company is a corporation under the laws of this state, engaged in the manufacture of merchant iron, and occupies and owns the premises used in said business on the west side of said street, from points quite a distance to the north and the south of plaintiff's premises; defendants own and operate a large plant on said premises, consisting of mills, shops and auxiliary buildings.

3. Said Front street is an ordained and opened highway, with an electric passenger railway track at or near the middle thereof; in the part of the borough here in question it is curbed all along the east side and on the west side from Rolling Mill alley to the northward; said alley is 16 feet wide, and begins on said street about 8 feet north of a point opposite to the south end of plaintiff's lot, and runs west; the curbing on the west side begins about 20 feet north of the point opposite the south line

of plaintiff; to the south of said alley along defendants' premises and the lands of another manufacturing establishment south of it there is no curbing on the west side; beyond the last named lands, say half a mile off, there is again curbing and paving on the west side; said street was laid out of the width of 33 feet; from curb to curb it is 33 feet according to defendants' assertions, and 37 according to plaintiff's allegation; it is of the width of 33 feet, or a few feet more.

4. Along the part of Front street here in question there is a public sidewalk extending back from the curb 11 feet all along the east side, and a like public sidewalk on the west side extending as far south as about 4 feet beyond the north side of said Rolling Mill alley—said sidewalks are part of the highway; (all the property owners set their buildings back at least 11 feet from where the curb now is, the borough authorities assumed and exercised control of said sidewalks.) It is not proved that south of said alley along defendants' premises the highway extends inside or west of said curb, or theoretical curb line.

5. On defendants' premises there is a building used for the reception and storage of scrap-iron; it was formerly two dwellings, and was built about 30 years ago; it is on or near the line of the highway, that is, 11 feet back from the curb, it is of a frontage of 32 feet, and is opposite to plaintiff's dwelling, or nearly so; the sidewalk space was and is paved in front of said building; the paving was put there many years ago, and it and the entire sidewalk space as far south as about 4 feet beyond the north side of said alley was rightfully used by the public to walk over—as already stated it was and is part of the highway. Some years ago the defendants purchased said dwellings and devoted them to the use aforesaid.

6. Shortly before the filing of this bill, defendants began the work of constructing a railroad (which it seems was completed at the time of the hearing) along the east side of their said establishment (from tracks to the south of their premises) to a point to the north of a point opposite to the north line of plaintiff, to be used for the purposes of their said business, including the carrying of scrap-iron to said scrap-house, and it was used for said purposes; cars were moved upon it by a locomotive, and on several occasions quantities of scrap-iron were unloaded

from the cars and thrown into said scrap house; the noise caused by the operation of said railroad and the unloading of the scrap-iron at times affected plaintiff's dwelling injuriously—but only to a slight degree. The operation of the said railroad renders plaintiff's premises less desirable as a living place than it would be if there were not such operation.

7. Said railroad is in part on said highway; its original location is shown by the draft appended to defendants' answer, which draft is found to be a correct representation of matters here in issue; for several hundreds of feet south of plaintiff's premises the east rail is 2 feet nearly outside of the curb, or theoretical curb line; at a point opposite to plaintiff's south line it curves to the west, crosses said alley, and where the curb on the west side begins as aforesaid, the track is entirely on the sidewalk space—and a few feet north of the scrap-house it again curves to the west, so that opposite plaintiff's north line it is entirely on defendants' land—inside of the building or line 11 feet back from the curb. The president of the defendant company testified that after said draft was made (and answer filed) said track was moved farther in (west) in the vicinity of a point opposite plaintiff's south line, so that there the outside rail is on the curb, or theoretical curb line; opposite plaintiff's premises the outside rail is on or within such curb line now; the fact on this point is as testified as above stated.

That defendants' railroad so far as it is upon the public highway (and the sidewalk is part of the highway, Livingston v. Wolf, 136 Pa. 519) is an unlawful structure is plain. Defendants are not vested with the right of eminent domain. Even if the borough authorities had granted leave to put the track where it is, such action would have been void and would affect no one. That this is so is conceded by defendants' counsel. Defendants' contention is that plaintiff's premises have not been injured and, even if injured that he has not shown that he is specially damaged, that if he is affected, it is only as the public generally is affected; that he is entitled to no relief in this proceeding..

Plaintiff's counsel rely mainly upon the Act of June 19, 1871, P. L. 1360, entitled an "act relating to legal proceedings by and against corporations" and Germantown Passenger Railway Company and Peoples Railway Company v. Citizens Railway

Company, 151 Pa. 138 and Thomas v. Inter-County Street
Railway Company, 167 Pa. 120, for the relief prayed by the bill.
Said act declares that in all proceedings in law or equity in
which it is alleged that the private rights of individuals, or of
other corporations are injured or invaded by any corporation
claiming to have a right to do the act by which such injury re-
sults it shall be the duty of the court to ascertain whether such
corporation does possess the right to do such act, and if such
rights have not been conferred upon such corporation the court,
if exercising equitable power, shall by injunction, at the suit of
private parties or other corporations, restrain such injurious
acts; and if the proceedings be at law it shall be lawful therein
to recover damages. In said Germantown railway case the two
companies plaintiff sought to enjoin the Germantown company
from laying railway tracks on Germantown avenue. The Su-
preme Court said that there was no merit in the contention,
that the companies plaintiff had no standing to contest defend-
ant's right; that said act of 1871 recognized the plaintiffs' right
to be heard. Said case of Thomas v. Railway Company was a
proceeding in equity wherein it was sought to restrain the
defendant from building a street railway on Ridge street in the
borough of Lansford. Plaintiff was the owner of property
abutting on said street. The court below granted the injunc-
tion. The Supreme Court affirmed the decree. In the opinion
of the higher court by Justice WILLIAMS it is said that defend-
ant was in the street in front of plaintiff's premises without
municipal consent and was committing a nuisance; that the
abutting owner was not debarred from proceeding in such a
case because there were other lot owners on the same street
who suffered in the same manner that he did; that the plaintiff
had what was called a general interest in the streets as a citi-
zen and a special interest in that street as an abutting owner
who must use it as a means of access to his property; he there-
fore had a right to object to its obstruction by a mere wrong-
doer. In this case defendant company is a corporation; it, like
the defendant in the case last alluded to, by occupying the
street, is a trespasser. Defendants' counsel's argument that
the railroad is not on plaintiff's side of the street, and that it
cannot be found that it obstructs access to his property, must
be answered by saying that plaintiff's right to the use of the

highway on which his property is located is not confined to a path to drive or walk to and from his house, but consists of the right to the whole highway—all of the driveway and all the sidewalks on both sides of the street.

The plaintiff is entitled to relief—it seems, to a decree requiring the defendants to remove the railroad from the highway. His counsel may prepare, serve and submit the form of a decree as provided by the rules. Counsel will then be heard as to the terms of the decree. The Supreme Court has indicated that exceptions may be filed in the trial court to its finding and decision: Fitzsimmons v. Robb, 173 Pa. 645.

A decree was entered in accordance with the above opinion.

*Error assigned* was decree of the court quoting it.

*Edward Harvey*, with him *A. N. Ulrich*, for appellants.— Where a railroad track is on a public street, owners of property in the vicinity, to sustain a complaint for constructing and maintaining it, must establish that it is a public nuisance, and that they have sustained special damage: Black v. P. & R. R. R Co., 58 Pa. 249 ; Buck Mt. Coal Co. v. Lehigh Coal & Nav, Co., 50 Pa. 91 ; Sparhawk v. Union Pass. Ry., 54 Pa. 401 ; Morris & Essex R. R. v. Prudden, 20 N. J. Eq. 531 ; Zabriskie v. Jersey City & Bergen R. R., 13 N. J. Eq. 315 ; Irwin v. Dixion, 9 Howard, 10 ; Reading v. Com., 11 Pa. 196 ; Seitz v. Traction Co., 5 Pa. C. C. 469 ; Cox v. R. R., 10 W. N. C. 552 ; Cox's App., 11 W. N. C. 571 ; Gold v. Phila., 115 Pa. 184; Heffner v. Com., 28 Pa. 108; Collins v. Elevated Ry., 32 W. N. C. 379 ; Knowles v. Pa. R. R., 175 Pa. 624; Hobson v. Phila., 155 Pa. 131; Higbee & Riggs v. R. R., 19 N. J. Eq. 276 ; Thomas v. Ry., 167 Pa. 120 ; Lejee v. Ry., 10 Phila. 362; Rudolph v. R. R., 166 Pa. 431 ; Pa. R. R. Co.'s App., 115 Pa. 514; Pa. R. R. v. St. Ry., 176 Pa. 578.

*A. G. Dewalt*, with him *John Rupp*, for appellee.—The powers of a corporation must be given in plain words or by necessary implication: Com. v. Erie, etc., R. R., 27 Pa. 339.

Where railroad companies or individuals exceed their statutory powers in dealing with other people's property, no question of damage is raised when an injunction is applied for : Com. v.

R. R., 24 Pa. 159; Barker v. Hartman Steel Co., 129 Pa. 551; Penna. R. R. Co.'s App., 115 Pa. 514.

The Act of June 19, 1871, P. L. 1361, enables a private citizen, by bill in equity, to call upon a corporation to show by its charter that it has the power to do a certain act; or, on the other hand, the complainant may show from said charter, that powers once possessed by the defendant corporation have been forfeited by lapse of time or otherwise : Western Penna. R. R. Co.'s App., 104 Pa. 399; Germantown Pass. Ry. v. Citizens Pass. Ry., 151 Pa. 138; Potts v. Elevated R. R., 161 Pa. 396; Lehigh Coal & Navigation Co. v. Inter-County St. Ry., 167 Pa. 75.

The commonwealth is not a necessary party complainant: Pa. R. R. v. Montgomery Co. Pass. Ry., 167 Pa. 73; Homestead St. Ry. v. Ry., 166 Pa. 162.

PER CURIAM, February 22, 1897 :

We think the learned court below correctly found that the plaintiff sustained special damage by the unlawful act of the defendant company, and that the case was therefore brought within the operation of the Act of June 19, 1871, P. L. 1360. This being so the decisions under that act control the present contention.   Of these, notably, are Pa. R. R. Co.'s Appeal, 115 Pa. 514; Barker v. Hartman Steel Co., 129 Pa. 551; Western Pa. R. R. Co.'s Appeal, 104 Pa. 399; Germantown Pass. Ry. Co. v. Citizens Pass. Ry. Co., 151 Pa. 138, and Potts et al. v. Elevated R. R. Co., 161 Pa. 396.   It is not necessary to review these cases in detail.   We are very clear as to their applicability to the facts of this case.

Judgment affirmed.