Breinig et ux. *v.* Allegheny County et al.,
Appellants.

Argued September 26, 1938.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Edward G. Bothwell,* Assistant County Solicitor, with him *Charles Alvin Jones,* County Solicitor, and *Walter P. Smart,* Acting County Solicitor, for appellants.

*Samuel A. Schreiner,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, December 5, 1938:

Appellants, the County of Allegheny and its commissioners, were enjoined from interfering with appellees' right of vehicular access to their property by means of driveways from the East Ohio Street approach to the county bridge over the Allegheny River.   Appellees let the property to a chain grocery, the lease expressly providing for such driveways.   The following relevant facts were found by the court below:  The property in question is located along the approach, 400 feet east of the bridge;  the latter forms a "T" with East Ohio Street, the only one it connects with on that side of the river. The lot on the east of appellees' is occupied by a gasoline station having several vehicular approaches with curb cuts.   On the west is a vacant lot, leased by appellees' lessees for parking purposes in connection with the store.

On the other side of the street, slightly east of appellees, is another gasoline station. On the western approach are several private garage driveways. East Ohio Street is 44½ feet wide, with a 3.6 to 3.8 per cent grade in front of appellees' property, and double car tracks. The street approach is used quite extensively, but the existing driveways to the various lots have created no serious congestion, and the borough authorities have indicated that appellees' driveways would not affect traffic adversely. Although the county constructed the street approaches to the bridge, the borough polices the thoroughfare. The only traffic regulation presently undertaken by the county is in the maintenance of a "blinker" at the bridge entrance.

Appellees obtained a permit from the county to construct the driveways, including cutting the curb, but, after that was done and construction begun, the permit was revoked. The county destroyed the driveways and restored the curbs. The court below held appellees could not be deprived of vehicular access altogether, and decreed that the county should permit the maintenance of the driveways, subject to reasonable regulations, awarding appellees $350 to pay for the restoration of the driveways. This appeal followed.

The questions presented require a discussion of the rights of an abutting owner in the residue of the fee in land that has been subjected to the easement of public use in the highway; of his rights in the abutting land not subject to such use, and the extent to which these rights may be regulated as an incident of the police power. We must also consider the extent of the public use of the highway; in a word, the relative rights of the public and the abutting landowners in the use of the highway and the abutting land.

Contrary to a general impression, when land has been taken for public use as a highway, the owner does not surrender his entire title to the land so taken, but reserves the fee in the residue of the highway land and he

may, as to such residue, exercise full rights of ownership. This residue of fee embraces rights above and below the surface: *Cain v. Aspinwall-Delafield Co.,* 289 Pa. 535, 539. Above, or on, the surface he may prevent members of the public from an unlawful use of the highway; for illustration, the parking of automobiles in front of an owner's premises may be prevented by him,[1] and police regulations permitting such parking will not preclude the owner from enforcing his right to remove the car.[2] Permission by the authorities to park for a limited period confers only a qualified privilege as against the public, and that privilege cannot infringe upon the abutting owner's private rights in the land in the highway.[3] The abutter may erect steps, cellar doors, awnings, projecting windows, cornices, balconies and the like, and may plant shade trees along the highway.[4] He may use the surface of the street temporarily for purposes necessarily incident to the abutting land. Thus he may place building materials or articles for house-

---

[1] The parking of cars for purposes other than social or business may be at once a public nuisance, a violation of police regulations, and a private nuisance or trespass to the abutting owner: *Birmingham v. Hood McPherson Realty Co.,* 233 Ala. 352, 172 So. 114; *State v. Muolo,* 119 Conn. 323, 176 Atl. 401; *In re Opinion of the Justices,* 8 N. E. (2d) 179 (Mass.); *Decker v. Goddard,* 233 App. Div. 139, 251 N. Y. Supp. 440; *Lowell v. Pendleton Auto Co.,* 123 Ore. 383, 261 Pac. 415. See also *Hopkins v. Mfg. Co.,* 180 Pa. 199.

[2] See *Hopkins v. Mfg. Co.,* 180 Pa. 199, 201; *Seibert v. Sebring,* 55 Pa. Superior Ct. 475, 478; *Decker v. Goddard,* 233 App. Div. 139, 251 N. Y. Supp. 440; *Lowell v. Pendleton Auto Co.,* 123 Ore. 383, 261 Pac. 415. Neither the legislature nor a municipality can, without compensation, appropriate private property for such a use. See *Hopkins v. Mfg. Co., Seibert v. Sebring,* and *Lowell v. Pendleton Auto Co.,* all supra; *Duquesne Light Co. v. Duff,* 251 Pa. 607, 611; *State v. Muolo,* 119 Conn. 323, 176 Atl. 401; *In re Opinion of the Justices,* 8 N. E. (2d) 179 (Mass.).

[3] *Decker v. Goddard* and *Lowell v. Pendleton Auto Co.,* both supra, notes 1 and 2.

[4] *Com. v. Hauck,* 103 Pa. 536; *Livingston v. Wolf,* 136 Pa. 519, 533; *Stuart v. Gimbel Bros., Inc.,* 290 Pa. 210.

hold use thereon for a reasonable length of time.[5] Under the surface of the highway he may build a mill race, tunnel or basement, or he may mine coal therefrom.[6] It is clear that, when the authorities take part of an owner's lot or land for highway purposes, his rights in the residuum of fee are not entirely swept away.

Even where the State, by purchase or eminent domain, acquires a fee in the land upon which the highway rests, the abutting owner may prevent such unlawful uses of the street in front of his premises as amount to private nuisances, such as parking. But, the use of the highway by the public *for transit* is free from restriction by the abutting owner or others. The right of way over land taken for highways, streets, and bridges, is the property of the State, and the public use of such facilities comes from that ownership.[7] In most instances of taking, as stated above, the State merely acquires the easement or right of way, though there are many cases where the title to the highway is taken in fee. In either case the ownership is in trust for public use generally,[8] for transit only,[9] duly considering the rights of all members of the traveling public. The right of passage includes the right, as against other members of the traveling public, to stop temporarily for business necessity, accident or the ordinary exigencies of travel.[10] It also includes

[5] *Mallory v. Griffey,* 85 Pa. 275, 277; *Piollet v. Simmers,* 106 Pa. 95, 108-9; *Stahle v. Poth,* 220 Pa. 335, 342; *Mullin v. Welsbach Street Lighting Co.,* 318 Pa. 552, 555.

[6] *Woadring v. Forks Township,* 28 Pa. 355, 361; *Breisch v. Locust Mt. Coal Co.,* 267 Pa. 546, 550; *Pollock v. Pittsburgh, Bessemer & Lake Erie R. R. Co.,* 275 Pa. 467; *Stuart v. Gimbel Bros., Inc.,* 285 Pa. 102.

[7] *Case of the Phila. & Trenton R. R. Co.,* 6 Whart. 25, 43; *Greene County v. Center Township,* 305 Pa. 79, 86-7.

[8] *Walnut & Quince Street Corporation v. Mills,* 303 Pa. 25, 35; *Phila. v. Teller,* 50 Pa. Superior Ct. 260, 265.

[9] *Duquesne Light Co. v. Duff,* 251 Pa. 607, 609.

[10] See *Barker v. Com.,* 19 Pa. 412; *Norristown v. Moyer,* 67 Pa. 355, 359; *North Manheim Twp. v. Arnold,* 119 Pa. 380; *Kessler v.*

the right to a reasonably safe passage, which may be enforced through the police power[11] even though the abutting owners' rights be diminished thereby.[12]

Where land is taken or purchased for highways, the abutting owner retains, as an incident to ownership of the remainder of his land, the right of access, or of ingress and egress. This right cannot be taken from him unless compensation is made therefor under the law. It is a property right, protected by the Constitution.[13] The right of access, in addition to the rights of the owner in the residue of the fee described above, differs from the right of passage by the public generally. Because of his right of access and his right in the highway as a member of the public, an owner, barring police regulations in the interest of public safety, may park his car in front of his home, or on his lot; he may permit his social visitors to so park; or he may permit them to enter his lot to park. He may load or unload goods, and may travel by foot, carriage or motor vehicle to and from his land.[14] For these purposes he may use the sidewalk, but such use must be with due regard to the rights of others using the highway and the sidewalk. On congested streets an owner may be entirely prevented from using the sidewalk with vehicles if he has other means of reaching his property.[15] This brings the case to its main issue, the right of vehicular access; the extent to which, and the circumstances under which, it may be carried on.

------

*Berger,* 205 Pa. 289; *Com. v. Challis,* 8 Pa. Superior Ct. 130; *Seibert v. Sebring,* 55 Pa. Superior Ct. 475, 479.

[11] See *Com. v. Funk,* 323 Pa. 390; *North Manheim Twp. v. Arnold,* supra, note 10.

[12] See *White's Appeal,* 287 Pa. 259, 263 et seq.; *Perrin's Appeal,* 305 Pa. 42, 48; *Com. v. Stofchek,* 322 Pa. 513, 519.

[13] *Cain v. Aspinwall-Delafield Co.,* 289 Pa. 535, 541.

[14] *Com. v. Hauck,* 103 Pa. 536; *Rafferty v. Central Traction Co.,* 147 Pa. 579, 593; *Valmont Developing Co. v. Rosser,* 297 Pa. 140, 150; *Spang & Co. v. Commonwealth,* 281 Pa. 414, 418.

[15] *F.-K. Market House Co., Inc., v. Reading,* 310 Pa. 493.

An abutting owner undoubtedly has the right to place his car in a garage on his own lot and for the purpose of access thereto he may use the sidewalk, cutting the curb under municipal permit, to enable him to make a safe entrance. But this right must be exercised subject to the protection of the public which may be using the highway or the sidewalk, and it may be regulated under the police power in the interest of safety. When there is no substantial interference with public travel this right cannot be denied him. We said in *Valmont Developing Co. v. Rosser*, 297 Pa. 140, 150: ". . . it is beyond the power of any municipality permanently to close its highways to the use of the abutting property owners; . . . Of course vehicular traffic could use the sidewalk only at the intersection, but pedestrian traffic is not to be denied the right of ingress and egress to and from adjoining lots when they are brought to grade or near grade so as not to be dangerous to the traveling public."

We held in *F.-K. Market House Co., Inc., v. Reading et al.*, 310 Pa. 493, that an ordinance forbidding the use of a congested sidewalk for vehicular traffic was good. We did, however, mention the fact that the owner had other means of access.

From the *Valmont* case and the *F.-K. Market House* case these propositions are clear: First, a municipality cannot, without condemnation, completely shut off an abutting owner's access to his land, particularly pedestrian access. Second, in highly congested areas the right of vehicular access may be reduced to a minimum, and be so limited as to exclude the right to maintain driveways immediately fronting the property, where it is possible to locate them elsewhere; if that is not possible, vehicular access may, in proper cases, be restricted to the hours of least congestion. Third, in utilizing all means of vehicular access care must be exercised to avoid danger to the traveling public. The first of these propositions is the one with which we are concerned in the present case.

The absolute prohibition of driveways to an abutting owner's land which fronts on a single thoroughfare, and which cannot be reached by any other means, is unlawful and will not be sustained. But the public authorities have the undoubted right to regulate the manner of the use of driveways by adopting such rules and regulations, in the interest of public safety, as will accord some measure of access and yet permit public travel with a minimum of danger. The rules and regulations must be reasonable, striking a balance between the public and the private interest. The abutter cannot make a business of his right of access in derogation of the rights of the traveling public. He is entitled to make only such use of his right of access as is consonant with traffic conditions and police requirements that are reasonable and uniform.[16]

The State in its sovereign capacity may entrust the control of its highways to political subdivisions or to other bodies: *Westmoreland Chemical & Color Co. v. P. S. C.*, 294 Pa. 451; *Greene County v. Center Township*, 305 Pa. 79, 86; *Tranter v. Allegheny Co.*, 316 Pa. 65, 74; but its police power can be exercised only through bodies possessing governmental powers. When the State entrusts control of its highways to municipal agencies the powers necessarily incident to their complete functioning are conferred by implication: *Chambersburg v. Porter*, 82 Pa. Superior Ct. 421, opinion by Judge, now Mr. Justice LINN; and see *Reimer's Appeal*, 100 Pa. 182, 185; *Sayre Boro. v. Phillips*, 148 Pa. 482. And highways may be so regulated by them as to limit the rights of abutting owners: see *Walnut & Quince*

---

[16] See *Livingston v. Wolf*, 136 Pa. 519, 533, 535, as to municipal regulations generally. As to regulation of driveways, see *Wilmot v. City of Chicago*, 328 Ill. 552, 160 N. E. 206; *Metcalf v. Mayor of Boston*, 158 Mass. 284, 33 N. E. 586; *Burke v. Metropolitan Dist. Comm'n*, 262 Mass. 70, 159 N. E. 739; *Goodfellow Tire Co. v. Commissioner of Parks, etc.*, 163 Mich. 249, 128 N. W. 410.

*Street Corp. v. Mills,* 303 Pa. 25, 31; see also *Brooks v. Buckley & Banks,* 291 Pa. 1, 3.

Here the bridge and its approaches were constructed by Allegheny County under authority of the State. The county was given complete authority to supervise and control the highway.[17] Though the actual policing of it was carried on by Millvale Borough, this would not preclude the county from adopting regulations for traffic or to protect the traveling public.[18] But such acts of regulation, or limitation of rights, under the police powers must be reasonable. They cannot be sustained if they are capricious, arbitrary, or unduly delimit and unreasonably intermeddle with the rights of an abutting property owner. When the county or other authorities so act it is not within the scope of the police power.[19]

Ordinarily the determination of this question is a legislative or executive matter, and the presumption is established that these officials act lawfully in exercise of their discretion.[20] But it is nevertheless the duty of the judiciary to inquire into that exercise, and if it is found the discretion of these other branches of government has been abused, we interfere immediately to relieve against oppressive and arbitrary action. This happens only when the asserted exercise of the police power is manifestly unreasonable, arbitrary or discriminatory, and the

---

[17] Section 903 of the General County Law of May 2, 1929, P. L. 1278, as amended June 9, 1931, P. L. 401, Section 1.

[18] See Section 330 of the General County Law, as added March 30, 1937, P. L. 114, Section 1, and also Sections 881 and 882, as added June 9, 1931, P. L. 401, section 23.

[19] *White's Appeal,* 287 Pa. 259, 266; *Nolan v. Jones,* 263 Pa. 124, 128; *Mahon v. Pennsylvania Coal Co.,* 274 Pa. 489, 497, followed in *Pennsylvania Coal Co. v. Mahon,* 260 U. S. 393.

[20] See *Hibbs v. Arensberg,* 276 Pa. 24; *Campbell v. Bellevue School Dist.,* 328 Pa. 197, 202; *Wilson v. Phila. School Dist.,* 328 Pa. 225, 239; *Miller v. Boro. of New Oxford,* 109 Pa. Superior Ct. 85, 91.

action of the officers patently unreasonable or oppressive.[21]

We agree with the court below that the action of appellants was unreasonable and oppressive. The circumstances did not require an absolute prohibition of driveways to appellees' property. We need not discuss the facts; they amply sustain the conclusions of the court below which were supported by the Millvale authorities. A complete bar to any driveways was too extreme a measure. Nor did the *Valmont* case attempt to preclude any vehicular access though, in that case, circumstances required it to be severely limited. The facts in the *F.-K. Market House* case are also distinguishable; there was another means of vehicular access and the pedestrian problem was acute, but here there is no pedestrian problem and there is no possible access by other means, as the rear of the property is a steep hill, almost perpendicular. Appellees and their lessees are entitled to maintain these driveways and to use them reasonably for legitimate business purposes. But, as the court below properly held, the authorities may regulate their use. We concur in this conclusion.

We do not attach importance to the agreement between the county and the borough respecting the rights of abutting landowners on this street, nor to the restriction in the deed referring to garages. The proposed use of appellees' land does not fall within this interdiction. It does not contemplate a "place for housing automotive vehicles."[22] The land is not to be used by the general public but only by the grocery company's customers during business hours. The parking of automobiles is incidental to the operation of the store. Appellees argue that, in addition to their common law right to maintain driveways, the agreement between the county and bor-

---

[21] See *Livingston v. Wolf*, 136 Pa. 519, 533; *White's Appeal*, 287 Pa. 259; *F.-K. Market House, Inc., v. Reading*, 310 Pa. 493, 502.

[22] Webster's New International Dictionary (2d ed.) 1033.

ough authorities at the time the county acquired the land for the approaches[23] creates an absolute right. Inspection of this agreement shows that, at most, the purpose of the parties was to avoid the difficulties of the *Valmont* case, and to prevent the erection of a balustrade completely cutting off the abutting owner's access. The agreement does not go beyond the ordinary rights of abutting owners. Moreover, even if it conferred such right as claimed, it could be taken away in the manner prescribed by law.

Appellees received a permit to cut the curb for the driveways from the permit clerk of the Department of Public Works of Allegheny County, on a form customarily issued for laying pipe lines; it contained a reference to an agreement between the permittees and the county commissioners. Appellants contend that the issuance of this permit was in excess of the clerk's authority, as he was instructed by the county commissioners to issue no permits for cutting curbs without referring the matter to them. It is true one dealing with municipal officers is generally bound to know the limitations on their authority,[24] particularly where the limitation is imposed by statute or ordinance and is therefore of record.[25] But a municipality like a private cor-

---

[23] The provision was: "The County agrees to permit property holders owning property abutting along the line of the bridge approaches to said Fortieth Street Bridge to exercise all the rights and privileges commonly possessed, exercised and enjoyed by property holders owning property abutting upon public streets and highways, to the end that the said abutting property holders shall be permitted to have direct access and communication (so far as the same is practical and consistent with the change of grade resulting from the grading and improvement of said bridge approaches by the County) to and with the said bridge approaches, and it is stipulated, agreed and understood that said bridge approaches shall constitute and be a part of the new Ohio Street."

[24] *Luzerne Township v. Fayette County*, 330 Pa. 247, 252; *Henry Shenk Co. v. Erie County et al.*, 319 Pa. 100, 103.

[25] 2 Dillon, Municipal Corporations (5th ed. 1911), section 777.

poration is subject to the doctrine of estoppel: *Philadelphia v. Anderson*, 142 Pa. 357; *New Castle City v. Withers*, 291 Pa. 216, 219. It may be estopped to deny the authority of its agents and employees to act if it has the power to, and by its conduct does, clothe an agent with the appearance of authority: *Mottin v. Board of Commissioners*, 89 Kan. 742, 133 Pac. 165; *Hetherington-Berner Co. v. Spokane*, 75 Wash. 660, 135 Pac. 484, though it cannot be bound for an act of its agent in excess of its corporate powers, or in violation of positive law, or for an act requiring legislative or executive action.[26]

The issuance of a permit is within the lawful powers of the county; moreover, it is an act usually performed by a clerk. The issuance of licenses and permits under conditions laid down by the legislative authorities is a ministerial or administrative function.[27] The county

[26] *New Castle City v. Withers*, 291 Pa. 216; *Bridgeport Brass Co. v. Drew*, 102 Conn. 206, 128 Atl. 413, and see *Wilke v. City of Ballinger*, 31 S. W. (2d) 1102, 1103 (Tex. Civ. App.).

[27] *Herskovits et ux. v. Irwin et al.*, 299 Pa. 155, 160; *Coyne v. Prichard et al.*, 272 Pa. 424; *Wright v. France*, 279 Pa. 22. It is universally recognized that such functions are delegable. See *American Baseball Club of Phila. v. Philadelphia*, 312 Pa. 311. In *Huebner et ux. v. Phila. Saving Fund Society*, 127 Pa. Superior Ct. 28, and *Junge's Appeal (No. 2)*, 89 Pa. Superior Ct. 548, 564, the delegation of powers to the zoning board as an administrative body was sustained. In *Com. v. Walton*, 182 Pa. 373, 377, the delegation by the City Council of Philadelphia of the power to distribute a police pension fund to an association established for that purpose was sustained. Many illustrations are to be found in the decisions of courts in other jurisdictions. *Biffer v. City of Chicago*, 278 Ill. 562, 116 N. E. 182 (superintendent of police to issue permits for purchase of firearms); *Baker v. City of Lexington*, 21 Ky. L. Rep. 809, 53 S. W. 16 (city clerk to issue municipal licenses to attorneys); *Moy v. City of Chicago*, 309 Ill. 242, 140 N. E. 845 (health commissioner to license public laundries); *Porter v. City of Hot Springs*, 171 Ark. 1142, 287 S. W. 585 (mayor and city clerk to issue permits to haul swill); *Carthage v. Garner*, 209 Mo. 688, 108 S. W. 521 (city clerk to issue permits for street and sidewalk excavations). See *Gundling v. City of Chicago*, 177 U. S. 183.

commissioners undoubtedly had the power to issue the permit in question through their designated administrative agent. It has been shown that the construction of the driveways and the cutting of the curbs was in itself lawful and in no way in conflict with the interests of the public. The county cannot deny the validity of the permit under which appellees acted in expending money for construction of the driveways.

The permit being validly issued, its revocation as here attempted was unlawful and ineffectual. But the mere fact that appellees commenced construction under a valid permit is not determinative, as they contend, of the question of whether it could be subsequently revoked. A permit or license is not a contract with the municipality which issues it: *Com. ex rel. v. Devlin,* 305 Pa. 440. In the present case it is unnecessary to decide the question of power to revoke, as the revocation of the permit by the county authorities was an abuse of discretion.

It is argued that equity has no jurisdiction and that mandamus is appellees' exclusive remedy. That equity has jurisdiction to protect rights appurtenant to land, is sustained in *Piro v. Shipley,* 211 Pa. 36, 45.[28] Appellees had a clear right to enjoin the absolute prohibition against maintaining driveways. *Lackawanna Ice Co. v. Weingartner,* 328 Pa. 362, is not in point; here we have no question of title. If the only relief sought by appellees were the issuance of a new permit to construct the driveways, mandamus might be the proper remedy.

The last question involved is the propriety of the award of damages. The allowance by the court below was proper. Appellants urge that these damages were not specifically prayed for in the bill. Paragraph 10

[28] *Valley Rys. v. Harrisburg,* 280 Pa. 385, 392; *Hopkins v. Mfg. Co.,* 180 Pa. 199; *Appeal of Hacke & Hugus,* 101 Pa. 245; *Valmont Developing Co. v. Rosser,* 297 Pa. 140; *F.-K. Market House Co., Inc., v. Reading,* 310 Pa. 493; *Walnut & Quince Street Corp. v. Mills,* 303 Pa. 25; *Crawford v. Town of Marion,* 154 N. C. 73, 69 S. E. 763.

avers the expenditures of sums of money in reliance on the permit, the conditions of sale, and the agreement between the county and the borough. The parties have stipulated that $350 represents the actual loss to appellees, and their prayer contained a request for damages resulting from the illegal interference with the right of access. The municipality by rebuilding the curbs and tearing up the driveways created an unlawful obstruction of appellees' ingress and egress to and from the premises. The relief prayed for by appellees included a removal of this obstruction. The court below could have ordered appellants to cut the curbing and restore the driveways as a means of access. The award of damages was relief in lieu of such an order, and is tantamount thereto since it represents the actual cost of the construction.

Decree affirmed at cost of appellants.