## DeGeorge v. Borough of Sinking Spring

*Ruth, Weidner, Woerle & Yoder*, for defendants.

SHANAMAN, J., January 11, 1957.— . . . After the hearing on February 14, 1956, at which plaintiff, his

counsel and witnesses appeared, the notes of testimony were duly filed on April 6, 1956, containing 115 type-written pages. On July 11, 1956, plaintiff's counsel withdrew their appearances, upon a written direction to them by plaintiff under date of July 2, 1956, wherein he avowed his knowledge that the case was listed for argument on September 10th, and that he would be unrepresented unless he employed other counsel. Counsel for defendants, hereupon, reordered the case for argument on November 5, 1956, and gave plaintiff notice of what they had done by registered mail. At the argument, neither plaintiff nor any counsel for him appeared, nor has plaintiff filed any requests for findings and conclusions. The chancellor has carefully read the testimony, and has carefully considered the facts and the law which bear upon the general issues raised by plaintiff's complaint. The chancellor is, of course, without the benefit of any suggestion of specific findings which plaintiff might deem valid and helpful to his suit, nor of any legal proposition which might conceivably be advanced by plaintiff.

Plaintiff has a business location (gas station) along a heavily traveled main highway between Harrisburg and Reading. Said Route 422, known as the William Penn Highway (in Sinking Spring, Penn Avenue), goes through the Borough of Sinking Spring, with an effective width of a four-lane highway, with parking on each side. Plaintiff's location is on the south side, at the southwest intersection of Route 422 and Mull Avenue, which enters Route 422 from the north, but stops at that highway and forms a "T" intersection. A short distance to the east is another intersection of Route 422 with the Shillington Road, which enters from the south and connects with the thickly populated Shillington district. Both intersections are protected by light signals. The Shillington Road inter-

section and the Mull Avenue intersection are so close as to immediately and substantially affect the local traffic condition.

Plaintiff has two driveways from his property to Route 422, one at the west end and one at the east, close to the intersection. He complains: (1) That westbound traffic on Penn Highway and also traffic from Mull Avenue into Penn Highway, which may desire to enter his premises, is prevented by eastbound traffic stopped by the Mull Avenue light, at which time said eastbound traffic piles up along his frontage and blocks his driveways; (2) that customers who are within his gas station and desire to leave, and to reenter Route 422 by left turn to go west, are similarly impeded and delayed by the same circumstances. He attributes this unsatisfactory condition to the Mull Avenue signal light and to a stop line painted across the surface of the eastbound traffic lane, at a point about 20 feet west of the west curb line of Mull Avenue (if produced into Route 422) and about 10 feet or, more exactly 11.2 feet east of the east edge of his east driveway. This surface line was painted by the borough at the time the signal light was installed, and not later than December 11, 1952. The line has become vague and faint, barely discernible and not readily noticed. Plaintiff at one part of his testimony stated in fact that at the time of the hearing no line was any longer visible. Plaintiff prays that the court order either the signal light to be done away with, or if it is to continue, that a new stop line be painted 40 feet west of the location of the former line.

The existing conditions involve a certain disadvantage to plaintiff. In heavy traffic an intending customer may have to wait a few minutes, and may decide to wait no longer, and then drive past. It is reasonable to believe that some business is being lost by plaintiff. On the other hand, plaintiff's location has

the advantage of a likelihood of more business because of frequency of the traffic. It is a fact also that some delay arises from the very heaviness of traffic, apart from any effect of the existing system of traffic control; this is, of course, a general condition on busy American thoroughfares, and gives rise to some of the frequent complaints issuing from individual merchants and organized groups of them. Moreover, it should not be forgotten that other competitive gas stations in plaintiff's immediate neighborhood, both east and west of plaintiff, are to some extent disadvantaged similarly by similar stop signals and general conditions.

In the present case, it is not denied that the system of traffic control was instituted upon the authority of State permit and rules, and lawful municipal ordinance or resolution, and the necessity thereof preliminarily ascertained by traffic survey. The installation and stop line were made with reasonable care for the convenience of drivers and the safety of themselves and pedestrians at a busy crossing. At the time this was done no gas station existed at plaintiff's location. Plaintiff did not start his gas station until 18 months thereafter (date of signal system December 11, 1952; date of gas station, August 10, 1954). Furthermore, the stop line complained of was not regulated as to location by any State rule or regulation at either of these dates. The traffic light is suspended overhead at the center of the intersection of Mull Avenue and William Penn Highway. That the State and, subject to its regulations and prohibitions, the borough, had the legal right to regulate traffic at this place for the purpose of safe driving to pedestrians and vehicles is neither denied nor deniable. A duty to exercise that right at this busy municipal crossing appears probable if not manifest. Plaintiff's prayer that the court order a dis-

continuance of the entire system must therefore be rejected.

Plaintiff, as previously mentioned above, has an alternative prayer that we order a new line to be painted 40 feet west of the location of the existing line. It is indeed doubtful whether what is left of the original line, now barely visible or perhaps quite invisible, is affecting traffic at all. Plaintiff testifies that people become used to the line, that it was subsequently renewed, and though now worn off, still has the effect of stopping traffic. It seems hardly credible that a stream of motorists from both near and remote sections of the country would know of, remember or observe the bidding of a former line no longer visible or barely visible. Their permission to drive up to the line and thus blanket plaintiff's access does not require the existence of a line at all, but the existence of a line may stop their further progress beyond such line. In this connection, it may be noted that Mr. Schlegel, State Traffic Engineer, regarded such lines as ineffective because in his opinion motorists drive "up to the light" (in this case, intersection). Nevertheless, it is believable that a plain surface line 40 feet west of the existing line would help plaintiff at least whenever the first car of a series approaching upon a stop signal, would obey the line. There is credible testimony indeed to that effect.

On the other hand, since the lights changed every 60 seconds, to go back with the line 40 feet, as prayed for, would delay traffic, because if the new line proved effective with motorists, every 19 feet further away from the intersection that it would be painted would allow one less car through during the brief duration of the "Go" signal. Such fact is of importance in the prevention of traffic jams. The legal difficulty under which plaintiff labors thus becomes

obvious. As has been shown, the case is not so much that he is hurt by an unfair and unreasonable line, since with no line at all the motorists would stop at the intersection or a short distance from it, and thus blanket him, but that he wants a line for his own purposes and desires that the court order a line such as will somewhat help his private interest, not unreasonably, it is true, but will also somewhat injure the public interest that vehicles on a much used highway be kept moving so far as compatible with public safety. The court cannot thus take upon itself an administration of the highway and usurp the field of flowing executive decision, a function not assigned to it, and which it is ill prepared to perform. For a discussion of the legitimate extent of judicial interference in such matters, in order to protect private right, see Farmers-Kissinger Market House Co., Inc. v. Reading, 310 Pa. 493. The Supreme Court also said, in Breinig v. Allegheny Co., 332 Pa. 474, 482:

". . . But the public authorities have the undoubted right to regulate the manner of the use of driveways by adopting such rules and regulations, in the interest of public safety, as will accord some measure of access and yet permit public travel with a minimum of danger. The rules and regulations must be reasonable, striking a balance between the public and the private interest. The abutter cannot make a business of his right of access in derogation of the rights of the traveling public. He is entitled to make only such use of his right of access as is consonant with traffic conditions and police requirements that are reasonable and uniform."

The desired relief is rendered legally impossible by a further consideration. A specific prayer, contained in a complaint, cannot be granted in any case, if that prayer seeks a judicial decree that would itself create an illegal condition. The 1955 edition of the Manual for Official Traffic Signals and Markings,

provides that thereafter lines shall not be drawn on the highway more than 15 feet from the near edge of an intersection roadway, or nearer than four feet. The original line was drawn by the borough about 20 feet away, at a time when there was no regulation of line location. The present rule (1955 Manual) permits but does not require any stop lines to be drawn on the surface of the roadway, and provides that if such line actually be adopted and drawn on the highway, it must comply with the 15 feet-four feet rule. This rule is in operation, has not been relaxed and whether a new painting or a repainting is in question, must be obeyed.

In the present case, Mr. Schlegel, the State Highway engineer, testified that the limit would be right in front of plaintiff's driveway, "within four to fifteen feet, under the discretion of the borough authorities." The chancellor cannot grant the prayer to order the borough to do that which would now violate the regulation. If it be contended that under the prayer for general relief the court should order the burgess and council to petition the Secretary of Highways of the Commonwealth to change the general highway directive or at least amend it so as to create a specific exception at the corner of Mull Avenue and Route 422, in the Borough of Sinking Spring, the answer is as previously shown, namely, that such a step lies distinctly within the discretion of the municipal government, that if the discretion is reasonably exercised, with an eye both to public and private rights, an omission to sue, or in this case, to petition, will not be judicially controlled, that there is no evidence that the Secretary of Highways would act favorably on such petition and it is not shown that plaintiff cannot himself seek such relief from the State Secretary from whom the directive emanated. Although plaintiff's situation is not devoid of appealing features,

nevertheless, as in Commonwealth v. McLaughlin, 168 Pa. Superior Ct. 442, we cannot say that the exercise of the police power in the present case "is manifestly unreasonable, arbitrary or discriminatory, nor that the actions of the officers were patently unreasonable or oppressive": id. 446.

## Conclusions of Law

1. The installation and operation of the overhead electric traffic signal at the intersection of Mull and Penn Avenues by defendant borough and its officers, joined as defendant, and the stop line indicating the maximum eastern point eastbound traffic may travel when confronted with the red signal, have not been shown to be unlawful or unreasonable.

2. The installation and operation of the signal and stop line does not completely shut off plaintiff's access or that of his customers, to his service station.

3. Plaintiff's right of access to his service station, including that of his customers, may be reasonably diminished, in the exercise of State and municipal police powers, in order to afford the traveling public reasonably safe passage over the public highway on which the service station abuts.

4. The installation and operation of the signal and stop line, under the evidence, is not an arbitrary and unreasonable exercise of the police power, nor is it a gross abuse of discretion in the exercise of such power.

5. Plaintiff, for the reasons above set forth, is not entitled to damages by reason of the installation and operation of the traffic signal and stop line.

6. Plaintiff's complaint is dismissed.

7. Plaintiff shall pay the costs.

And now, to wit, January 11, 1957, the prothonotary is directed to enter a decree nisi in accordance with the foregoing decision, and forthwith to give notice thereof to the parties or their counsel of record.